**IN UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ADAM ZUCKERMAN**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**LAST ENERGY, INC., *et al.*,**<br><br>**Defendants.** | **Civil Action No. 1:26-cv-02837-CJN** |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants Last Energy, Inc. ("Last Energy") and Bret Kugelmass ("Mr. Kugelmass") (collectively "Defendants"), submit the following Memorandum of Points and Authorities in support of their Motion to Dismiss Plaintiff Adam Zuckerman's ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim. For the reasons set forth below, Defendants respectfully request that the Court grant their Motion and dismiss Plaintiff's Complaint, with prejudice.

## I. INTRODUCTION

In this Complaint, Plaintiff seeks recovery of stock options granted to him during his employment with Last Energy, which he claims that Defendants wrongfully prevented him from exercising. He does so through numerous theories: Count I – Breach of Express Contract; Count II – Breach of Implied Covenant of Good Faith and Fair Dealing; Count III – Fraudulent Misrepresentation; and Count IV – Violation of the D.C. Wage Payment and Collection Law (DCWPCL). For good measure, Plaintiff also alleges that Defendants retaliated against him in violation of the D.C. Wage Payment and Collection Law.

Each of these claims, however, is insufficiently pled and/or barred by one of the other counts. Specifically, as to Count I, Plaintiff cannot plead a breach of contract claim because the agreement in question grants exclusive discretion in Last Energy to decide whether or not to terminate a person "for Cause," thereby preventing exercise of any vested stock options units. Count II fails because Plaintiff uses this theory to try to obtain rights the parties did not bargain for and that their agreements expressly foreclose. Count III fails because it is merely a contract claim repackaged as fraud, as the alleged misrepresentation concerns Plaintiff's resignation, termination status, and resulting option rights under the parties' agreements, and Plaintiff also fails to plausibly allege justifiable reliance or fraud with Rule 9(b) particularity. Count IV fails because Plaintiff does not plausibly allege any unpaid wages or compensation actually due, since his DCWPCL claim depends entirely on a purported contractual right to exercise stock options that, under the Plan's terms, terminated immediately upon his for-Cause termination. Finally, Plaintiff's retaliation claim in Count V fails because he has not pled facts that show, or from which the Court can reasonably infer, retaliatory causation.

## II. STATEMENT OF [ALLEGED] FACTS[1]

According to the Complaint, Plaintiff Adam Zuckerman began working for Defendant Last Energy, Inc. in May 2020 as the Vice President of Business Development. (Compl. ¶ 12, ECF No. 1-2.) Plaintiff alleges that the terms of his employment were memorialized in a May 6, 2020 Offer Letter providing for both salary and equity compensation. (*Id.* at ¶ 13 & Ex. A.) Specifically, Plaintiff alleges that he received an option grant to purchase 148,148 shares of Last Energy common stock, subject to the terms of the Company's 2018 Equity Incentive Plan. (*Id.* at ¶ 14 &

[1] Defendants assume, as they must at this procedural stage, the truth of all well-pled allegations in the Complaint for purposes of this Motion only. Defendants deny Plaintiff's factual account and maintain that all of their actions were lawful.

Ex. B.) Plaintiff further alleges that the option grant was issued on May 7, 2020, and approved on May 8, 2020. (*Id.* at ¶ 15 & Exs. C-D.).

According to Plaintiff, the stock options were not discretionary but instead were a "core component" of his compensation package and vested over time based on his continued employment. (Compl. ¶ 16.) By the time his employment with Last Energy ended in July 2023, Plaintiff asserts he had accumulated 78,189 vested options. (*Id.* at ¶ 17.) Throughout the Complaint, Plaintiff repeatedly affirms that the award of the stock options, the vesting, and any opportunity to exercise those options, were governed by the Offer Letter, the Equity Incentive Plan, the option grant, and related approvals. (Compl. ¶¶ 13-17, 64-65.)

Plaintiff claims that over the course of his three years of employment with Last Energy, he became "increasingly concerned" about Defendants' business practices and integrity. (Compl. ¶ 23.) In February 2023, Plaintiff claims that he got into a "heated argument" with Mr. Kugelmass about "recurring issues" with how the Company responded to employee efforts to exercise awarded stock options. (*Id.* at ¶ 26.) In Plaintiff's telling, during this argument, Mr. Kugelmass threated to fire Plaintiff if he attempted to exercise his vested options. (*Id.*) After this dispute, Plaintiff alleges that he called the then-General Counsel of Last Energy to tell him about Mr. Kugelmass's threats, as well as the alleged practice of frustrating employee efforts to exercise stock options. (*Id.* at ¶ 28.) Plaintiff did not inform Mr. Kugelmass of this conversation. (*See id.* at ¶ 29.) Plaintiff claims that after this disclosure, he suffered a "diminished" roles and responsibilities. (*Id.* at ¶¶ 30-31.)

Plaintiff alleges that on July 17, 2023, he informed Last Energy that he intended to resign. (Compl. ¶¶ 34-35.) Plaintiff claims that he first told the acting General Counsel about his intent to resign and repeated the concerns he raised to the previous General Counsel in February 2023. (*Id.*

at ¶ 36.) When Plaintiff informed his supervisor that he wished to resign and offered up the six-week transition period, the two discussed and decided that the standard two weeks were sufficient for Plaintiff to wrap up his work. (*Id.* at ¶ 37.) After coming to these terms with his supervisor, Plaintiff informed Mr. Kugelmass of this plan, which Plaintiff claims Mr. Kugelmass "approved" that day. (*Id.* at ¶¶ 35-39.)

Plaintiff claims that the next day, July 18, 2023, he submitted a request to exercise his vested stock options, a process that could take between two and five business days to complete. (*Id.* at ¶ 42.) Plaintiff alleges that later on July 18, 2023, Mr. Kugelmass notified him by email that his employment was being terminated for Cause, effective immediately. (*Id.* at ¶ 45 & Ex. E.) The termination notice stated that, following a "further inquiry," Last Energy had determined that Plaintiff had engaged in repeated violations of the Company's IT policy and therefore was being terminated for "Cause" as defined in Section 2.5(ii) of the 2018 Equity Incentive Plan. (*Id.* at ¶¶ 45-47.) Plaintiff, denying any wrongdoing, instead claims that the decision to terminate was a "post hoc" decision, the sole purpose of which was to deny him the ability to exercise his stock options. (*Id.* at ¶¶ 41, 56, 67-68, 75-80.)

## III. STANDARD OF REVIEW

A motion to dismiss bought pursuant to Rule 12(b)(6) must be granted when the plaintiff fails to state a claim for relief. Specifically, a 12(b)(6) motion to dismiss tests the sufficiency of a complaint. *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002). To be sufficient, and thus withstand dismissal, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (deletion omitted). To meet this standard, "[f]actual allegations [taken as true] must be enough to

raise a right to relief above the speculative level." *Id.* It is not enough for a complaint to create a mere suspicion of a legally cognizable right of action or make a "blanket assertion" of entitlement to relief. *Id.* at 555 n.3. To adequately plead a claim for relief, a complaint must contain something more than "a formulaic recitation of the elements of a cause of action" or "naked assertion[s]" devoid of factual enhancement. *Id.* at 555, 557. The facts outlined in the complaint must demonstrate that the plaintiff's claim for relief is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

When evaluating a motion to dismiss, a court must treat a complaint's factual allegations as true, but it "need not accept inferences drawn by plaintiff if such inferences are unsupported by the facts set out in the complaint. Nor must the court accept legal conclusions cast in the form of factual allegations." *Sheller-Paire v. Gray*, 888 F. Supp. 2d 34, 37 (D.D.C. 2012) (alteration omitted) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). Accordingly, a court must separate the legal conclusions from the factual allegations and should dismiss a cause of action when the plaintiff does not allege facts sufficient to allow the "court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678-79. While a court typically is limited to the four corners of a complaint when making this evaluation, at the motion to dismiss stage, and without requiring the conversion to summary judgment, the Court may consider documents that are incorporated into the complaint, whether by being attached to it or expressly relied upon therein. *Hinton v. Corr. Corp. of Am.*, 624 F. Supp. 2d 45, 46-47 (D.D.C. 2009); *Marshall v. Honeywell Tech. Sol.*, 536 F. Supp. 2d 59, 65-66 (D.D.C. 2008). Moreover, "when a written instrument is attached to a complaint and it contradicts the allegations in the complaint, the written instrument controls." *Regan v. Spicer HB, LLC*, 134 F. Supp. 3d 21, 26 (D.D.C. 2015). This means that when a written document attached to a pleading

squarely contradicts the allegations, the Court need not assume the accuracy of the allegations in the complaint.

## IV. ARGUMENT

### A. Count I Fails Because the Complaint and Incorporated Documents Establish that Defendants did not Breach Any Contract

To plead a breach of contract claim under District of Columbia law, "a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Zaccari v. Apprio, Inc.*, 390 F. Supp. 3d 103, 108 (D.D.C. 2019). Plaintiff fails at the third element because the very agreements on which his claim relies upon expressly authorized the actions he challenges. By extension, no breach has occurred.

Plaintiff's breach claim is premised on the allegation that Last Energy wrongfully designated his separation as a termination for Cause and therefore improperly denied him the ability to exercise vested options. (Compl. ¶¶ 67-68.) But that theory fails on the face of the very documents on which the Complaint relies. The documents establish that if Plaintiff was terminated for Cause, he had no contractual right to exercise those options after termination. (*Id.* ¶ 41, Ex. B § 7.7, Ex. D.) The Equity Incentive Plan defines "Cause" to include, among other things, "any failure by Participant to comply with the Company's material written policies or rules." (*Id.* at Ex. B § 2.5(ii).) The Notice of Termination attached to the Complaint expressly informed Plaintiff that Last Energy determined he had engaged in "repeated violations of the Company's IT policy" and was therefore being terminated for Cause pursuant to that exact provision. (*Id.* at ¶ 46 & Ex. E.) Critically, the Plan provides that "[t]he determination that a termination of the Participant's Service is either for Cause or without Cause will be made by the Company, **<u>in its sole discretion</u>**." (*Id.* at Ex. B § 2.5 (emphasis added).) The Plan separately provides that when service is terminated for

Cause, "the Participant's right to exercise an Option shall terminate immediately on the effective date of the Participant's termination." (*Id.* at Ex. B § 7.7.)

So, Plaintiff's own exhibits establish that: (1) the parties agreed the Company had the sole discretion to determine whether Cause for termination existed; (2) the Company determined that Cause existed to end Plaintiff's employment; and (3) the Plan expressly states that a for-Cause termination immediately extinguishes option exercise rights. (Compl. ¶¶ 43-47 & Ex. B.) Because the plain language of the Agreement that Plaintiff willingly signed at the beginning of his employment bestows upon Last Energy sole discretion to decide when an employee is terminated for Cause, and Last Energy did just that, Plaintiff fails to identify any contractual provision that Defendants violated. Instead, he disagrees with Last Energy and attempts to generate a cause of action based on this disagreement by claiming that the Company's determination was "pretextual" and "in bad faith." (Compl. ¶¶ 48, 51, 57.) Those are conclusory assertions that do not alter the contractual language or plausibly establish breach. After all, a court need not accept legal conclusions masquerading as factual allegations, particularly where the written documents incorporated into the Complaint directly govern the disputed conduct. *Trudeau v. Federal Trade Comm'n*, 456 F.3d 178, 193 (D.C. Cir. 2006) ("In considering the claims dismissed pursuant to Rule 12(b)(6), we must treat the complaint's factual allegations as true [and] must grant plaintiff the benefit of all reasonable inferences from the facts alleged, we are not bound to accept as true a legal conclusion couched as a factual allegation, or to accept inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." (internal citations omitted).)

Count I also fails because Plaintiff does not plausibly allege nonperformance by Last Energy in the face of allegations that the Company invoked an express contractual basis for termination for Cause. The Notice of Termination states that the Company's decision rested on

"repeated violations of the Company's IT policy." (Compl. Ex. E.) Plaintiff does not allege that the Plan barred the Company from relying on such violations, nor could he. Section 2.5(ii) expressly includes noncompliance with material written policies within the definition of Cause. (*Id.* at Ex. B.) At most, Plaintiff disputes the correctness or fairness of the Company's determination. But a disagreement with the Company's exercise of discretion is not the same as a plausible allegation that the Company breached the contract – particularly where the contract expressly commits the Cause determination to the Company's "sole discretion."

As a result, Count I fails as a matter of law because Plaintiff never identifies a contractual provision requiring Last Energy to approve his option exercise after a for-cause termination, or prohibiting the Company from making the Cause determination it made. The contract says the opposite. Because the Complaint and incorporated exhibits establish that Last Energy did exactly what the governing agreements permitted it to do upon a determination of Cause, Plaintiff has not plausibly alleged breach. Count I should therefore be dismissed.

**B. Count II Fails Because an Implied Covenant Cannot Override the Express Terms of the Parties' Agreements**

Count II fails as a matter of law because Plaintiff attempts to use the implied covenant of good faith and fair dealing to obtain rights the parties did not bargain for and that their agreements expressly foreclose. Under District of Columbia law, the implied covenant inheres in every contract, but it is not a vehicle for rewriting the parties' deal. "The implied duty of good faith imposes an obligation on a contracting party not to evade the spirit of the contract, willfully render imperfect performance, or interfere with performance by the other party, but it does not require a party to waive or rewrite the terms of the contract." *Sibley v. St. Albans Sch.*, 134 A.3d 789, 806 (D.C. 2016) (internal quotation marks, internal citation, and brackets omitted); *see also Berlin v. Bank of Am., N.A.*, 101 F. Supp. 3d 1, 17 (D.D.C. 2015) (no breach of good faith "where reasonable

persons in the parties' shoes would have expected the contract to be performed as it was."). It cannot be invoked to add obligations the plain language of the contract does not impose in order to deprive a party of rights the contract expressly grants, or to negate contractual provisions simply because one party dislikes the outcome of their application. Where a contract vests discretion in one party, the implied covenant may constrain arbitrary conduct in some circumstances, but it does not erase the discretion itself or permit the court to substitute a different contractual regime. *See, e.g.*, *Billups v. Lab. Corp. of Am.*, 233 F. Supp. 3d 20, 25-26 (D.D.C. 2017) (holding that plaintiffs claim for breach of implied covenant of good faith failed because defendant had a high level of discretion regarding performance of the contract).

That is exactly what Plaintiff seeks to do here. The Equity Incentive Plan unambiguously provides that "[t]he determination that a termination of the Participant's Service is either for Cause or without Cause will be made by the Company, in its sole discretion." (Compl. Ex. B § 2.5.) The same Plan separately provides that, upon a termination for Cause, "the Participant's right to exercise an Option shall terminate immediately on the effective date of the Participant's termination." (*Id.* at § 7.7.) Those are not gaps for an implied covenant to fill; they are express terms that directly address both which party decides whether Cause exists and what happens to outstanding options if Cause is found.

Plaintiff's implied covenant claim therefore rises or falls with the same defective premise as his contract claim: that Last Energy was not permitted to use its sole discretion to determine his conduct justified for Cause termination and enforce the consequences that the Plan expressly attaches to that determination. He alleges that Last Energy acted "dishonestly" in finding Cause and thereby deprived him of vested options. (Compl. ¶ 71.) But relabeling the breach of contract theory as one for breach of the implied covenant does not save it but instead dooms it. An implied-

covenant claim cannot survive where it merely duplicates a breach-of-contract claim or seeks to nullify express contract language. Here, Plaintiff's theory would do both. If accepted, it would transform the Company's "sole discretion" into something less than sole discretion and would effectively rewrite § 7.7 so that options remained exercisable even after a for-Cause termination. The implied covenant cannot be used for either purpose because doing so would deprive Last Energy of the contractual rights it reasonably believed it had bargained for. *See Montesano v. Catholic Univ. of Am.*, 548 F. Supp. 3d 6 (D. D.C. 2021) (court rejected using the covenant as a device to limit the scope of an express contractual promise).

The Complaint also undermines any suggestion that Defendants frustrated Plaintiff's reasonable contractual expectations. While Plaintiff claims that he had Plaintiff has been aware of the terms of the Plan—including that the Company has sole discretion to determine if employee conduct warrants a for-Cause termination and that such a termination removes the ability to exercise the options—since the day he signed it. The fact that Plaintiff expected to end his employment via resignation rather than being fired for wrongdoing, however, does not equate to some hidden manipulation of the contract. It resulted from the very contractual consequence the Plan expressly prescribes when the Company determines, in its sole discretion, that an employee was terminated for Cause.

Nor do Plaintiff's allegations about the reasons for termination plausibly state an implied-covenant claim. The Notice of Termination attached to the Complaint states that Last Energy based its decision on "repeated violations of the Company's IT policy." (Compl. Ex. E.) The Plan's definition of Cause expressly encompasses "any failure by Participant to comply with the Company's material written policies or rules." (Compl. Ex. B § 2.5(ii).) Plaintiff may disagree with the Company's judgment that his conduct warranted termination for Cause, but that

disagreement does not convert an exercise of express contractual discretion into bad-faith deprivation of contractual benefits. Nor does his disagreement automatically change his conclusory assertions that the basis for termination are false or dishonest into well pleaded allegations that pass muster under the *Twiqbal* standard. The implied covenant does not authorize judicial second-guessing of a decision that the contract expressly assigns to one party, particularly where the Complaint itself shows that the stated basis for the decision falls within the contract's definition of Cause.

At its core, Count II is an impermissible circumvention of the contract's plain language. Plaintiff cannot use the implied covenant to undo the parties' express allocation of discretion regarding termination, to preserve option rights the Plan expressly extinguishes upon a for-Cause termination, or to create a contractual entitlement that the agreements do not provide. Because Count II seeks to override and not enforce the parties' bargain, it fails as a matter of law and should be dismissed.

### C. Count III Should Be Dismissed Because Plaintiff's Fraud Claim Is Nothing More Than a Contract Claim Disguised as a Tort

#### 1. Plaintiff's fraudulent misrepresentation claim is impermissibly duplicative of his contract claims.

Count III should be dismissed because it is nothing more than a contract claim recast as fraud. District of Columbia courts do not permit a plaintiff to convert an ordinary dispute over contractual rights and performance into a tort claim simply by attaching the label "fraud" to the same alleged misconduct. Where the parties' relationship is governed by express agreements, and the alleged wrongdoing concerns rights, obligations, and consequences created by those agreements, the claim sounds in contract, not tort. *See Motir Servs., Inc. v. Ekwuno*, 191 F. Supp. 3d 98, 112 (D.D.C. 2016); *Plesha v. Ferguson*, 725 F. Supp. 2d 106, 113 (D.D.C.2010). A fraud claim may proceed alongside a breach of contract claim only in narrow circumstances – such as

where the plaintiff identifies a duty independent of the contract, a misrepresentation collateral or extraneous to the contract, or special damages unavailable in contract. *Choharis v. State Farm Fire and Cas. Co.*, 961 A.2d 1080, 1088-89 (D.C. 2008), Plaintiff alleges none of those things here.

First, the Complaint identifies no duty owed independently of the parties' contractual arrangements. To the contrary, Plaintiff's own allegations make clear that every right he claims was defined by contract. He expressly alleges that his purported right to exercise stock options arose from the Offer Letter, the Equity Incentive Plan, the option grant, and related approvals. (Compl. ¶¶ 13-15, 64-65.) Just as importantly, the very question at the center of this dispute of whether Plaintiff's separation constituted a termination "for Cause," thereby affecting his ability to exercise options, also arises solely from those same contractual documents, particularly the Equity Incentive Plan. (Compl. ¶¶ 41, 47, 67.) In other words, the alleged wrong is not the violation of some freestanding duty imposed by law; it is the alleged misapplication or misinterpretation of contractual provisions governing Plaintiff's employment separation and equity rights. That is a standard contract dispute.

Second, the alleged misrepresentation is not collateral or extraneous to the contract but instead goes to the heart of the parties' contractual relationship. Plaintiff alleges that on July 17, 2023, Mr. Kugelmass accepted his resignation and agreed that Plaintiff would remain employed during a two-week transition period. (Compl. ¶¶ 39, 75.) Plaintiff then alleges that Defendants later characterized his separation as a termination for cause, which in turn extinguished his claimed stock-option rights. (Compl. ¶¶ 76-80.) But that alleged statement and the later treatment of Plaintiff's departure are not separate from the governing agreements; in fact, they are inseparable from them. They concern Plaintiff's employment status, the nature of his separation, and the consequences of that separation under the Equity Incentive Plan. Put simply, Plaintiff's fraud

theory depends entirely on the same premise as his contract claims – that Defendants wrongly determined his status under the parties' agreements and thereby denied him benefits he claims those agreements guaranteed. That is not an independent tort. It is an attempt to relabel an alleged breach of contract as fraud.

Third, Count III seeks no damages distinct from those sought under Plaintiff's contract claims, confirming that it is wholly duplicative. In Count I, Plaintiff seeks damages based on the value of the equity he allegedly lost. (Compl. ¶ 68.) In Count II, he again seeks the value of that same allegedly lost equity. (*Id.* at ¶ 72.) And in Count III, he seeks precisely the same measure of damages in the alleged value of the equity he claims he was denied. (*Id.* at ¶ 81.) Plaintiff does not allege any special damages caused by the supposed misrepresentation that would be unavailable under contract law. He identifies no separate out-of-pocket loss, no distinct consequential injury, and no harm untethered from the benefits he contends the contracts entitled him to receive. The absence of any non-duplicative damages further confirms that Count III is not a separate, stand-alone fraud claim that can exist at the same time as the breach of contract claim. .

**2. Plaintiff fails to plausibly allege justifiable reliance or cognizable fraud damages.**

Count III also fails because the Complaint does not plausibly allege either justifiable reliance or a fraud injury caused by the alleged misrepresentation. Plaintiff's theory is that he relied on Mr. Kugelmass's supposed acceptance of a two-week transition period by remaining employed rather than ending his employment immediately. (Compl. ¶ 79.) But the Complaint's own allegations do not support that theory. Plaintiff alleges that the idea of a transition period originated with him, not Defendants. He first considered remaining for as long as six weeks and then decided he would wind down his role over two weeks. (*Id.* at ¶¶ 35-37.) In other words, the transition period was not proposed by Defendants, was not alleged to be a condition imposed by Defendants

and is not alleged to have altered any preexisting decision by Plaintiff to depart immediately. At most, Plaintiff alleges that he sought to leave on a timeline of his own choosing and that Mr. Kugelmass did not object to that proposal. That is not a plausible basis for alleging that Plaintiff materially changed position in reliance on a fraudulent statement.

The chronology alleged in the Complaint further defeats any plausible inference of reliance or causation. Plaintiff alleges that he submitted his option-exercise request on July 18, 2023, which was just one day after announcing his resignation. (Compl. ¶ 42.) This means that Plaintiff was not waiting for the end of any proposed transition period before acting to preserve or exercise his options. To the contrary, by his own account, he initiated the exercise process immediately. That matters because Plaintiff's alleged injury is the loss of his ability to exercise vested options, yet the Complaint does not plausibly allege that this loss resulted from his decision to remain employed during the transition period he himself proposed. If Plaintiff had already moved to exercise his options the day after giving notice, then his alleged harm cannot be traced to any supposed representation that he would remain employed for two more weeks.

Instead, the Complaint makes clear that the alleged injury arose from Defendants' decision to characterize his separation as a termination for Cause—which the contract permits them to do—and to deny or cancel his exercise request on that basis. That is the same alleged conduct underlying Plaintiff's contract-based claims. Fraud requires more than an assertion that a defendant later took a position inconsistent with the plaintiff's expectations; it requires plausible allegations that the plaintiff justifiably relied on a false statement and, because of that reliance, suffered a distinct injury. *See Busby v. Capital One, N.A.*, 932 F. Supp. 2d 114, 136 (D.D.C. 2013). Here, the Complaint does not bridge that gap. It does not plausibly allege that Plaintiff would have acted differently absent the alleged statement, that any different action would have preserved his options,

or that remaining during the self-proposed transition period caused any injury independent of Defendants' later contractual determination. Count III therefore fails for this independent reason as well.

#### 3. Count III does not satisfy the heightened pleading standards under Rule 9(b).

Count III should also be dismissed because it does not satisfy Rule 9(b)'s heightened pleading standard. Rule 9(b) of the Federal Rules of Civil Procedure requires the plaintiff to "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). A plaintiff must do more than assert in conclusory fashion that a defendant made a statement that later proved false. The D.C. Circuit requires a fraud plaintiff to plead the essential circumstances of the alleged fraud with specificity, including the false statement, its content, the context in which it was made, and what the plaintiff gave up in reliance on it. *See U.S. v. Martin-Baker Aircraft Co., Ltd.*, 389 F.3d 1251, 1256-59 (D.C. Cir. 2004).

Although the Complaint identifies the alleged speaker and the approximate date of the statement, that is not enough. Plaintiff's theory depends on the assertion that when Mr. Kugelmass allegedly agreed to a transition arrangement, he secretly harbored an undisclosed intention to later treat Plaintiff's separation as a termination for cause. (Compl. ¶¶ 76-77.) But that is precisely the kind of serious accusation that Rule 9(b) requires a plaintiff to support with particularized factual allegations, which the Complaint does not do so.

Instead, the allegation of fraudulent intent is pleaded only upon "information and belief." (Compl. ¶ 77.) The Complaint does not allege particularized facts showing that Mr. Kugelmass lacked any present intention to honor the transition arrangement at the time the statement was made. It does not allege when the supposed decision to terminate Plaintiff for cause was actually reached. And it does not identify any contemporaneous facts, documents, statements, conduct, or

communications, from which a plausible inference of fraudulent intent at the time of the alleged representation could be drawn. At most, Plaintiff alleges that Defendants later acted inconsistently with the earlier statement. But a subsequent disagreement over performance, or even an alleged later reversal of position, does not itself establish that the original statement was fraudulent when made. Without particularized facts supporting that inference, the Complaint falls well short of Rule 9(b).

In short, Count III is deficient not only because it duplicates Plaintiff's contract theories, but also because it fails to plead the essential elements of fraud with the specificity the Federal Rules require. It should therefore be dismissed.

**D. Count IV Fails Because Plaintiff Does Not Plausibly Allege Any Unpaid Wages**

The claims for the DC Wage Payment and Collection Act in Count IV should be dismissed because Plaintiff does not plausibly allege that Defendants failed to pay any wages or other compensation that were actually due at the time of his separation. His claim under the D.C. Wage Payment and Collection Law is entirely derivative of his failed contract theory. That is, Plaintiff contends that Defendants wrongfully withheld compensation by refusing to allow him to exercise vested stock options after his separation. (Compl. ¶¶ 87-91.) But the Complaint itself makes clear that any entitlement to exercise those options arises, if at all, solely from the governing employment and equity agreements. (Compl. ¶¶ 13-15, 64-65.) Once those agreements are applied as written, the wage claim necessarily collapses.

As alleged in the Complaint and shown by the incorporated exhibits, the Equity Incentive Plan expressly provides that, if a participant is terminated for Cause, their right to exercise options terminates immediately on the effective date of the participant's termination." (Compl. Ex. B § 7.7.) The Plan further provides that the Company determines whether a termination is for Cause, "in its sole discretion." (*Id.* § 2.5.) And the Notice of Termination states that Last Energy

determined Plaintiff was terminated for Cause based on repeated violations of the Company's IT policy. (Compl. Ex. E.) Thus, under the plain terms of the agreements on which Plaintiff relies, once Last Energy made that determination, Plaintiff no longer had any contractual right to exercise the options. If there was no surviving contractual right to exercise the options, then there was no compensation "due" that Defendants were obligated to pay or provide.

That is fatal to Count IV. His statutory claim therefore depends entirely on the same premise as Count I – namely, that Defendants should have allowed him to exercise options despite the Plan's express forfeiture provision. But because that premise is foreclosed by the contract documents incorporated into the Complaint, it cannot support a statutory wage claim either.

Put differently, Count IV improperly attempts to transform a disputed contract theory into a wage-payment violation. But the statute does not create an independent entitlement to compensation that the parties' agreements expressly extinguish. Plaintiff must plausibly allege that compensation was actually owed and unpaid. Here, the Complaint and exhibits establish the opposite. Plaintiff's ability to exercise his options terminated immediately upon his for-cause termination. Because Plaintiff has not plausibly alleged that any wages, salary, or other compensation remained due and unpaid, Count IV fails as a matter of law and should be dismissed.

### E. Count V Fails Because the Complaint Does Not Plausibly Allege Causation or Knowledge by the Company or Any Decisionmaker

Plaintiff's retaliation claim fares no better. To state a *prima facie* case of retaliation, the plaintiff must demonstrate that: "(1) [he] was engaged in a protected activity . . . ; (2) the employer took an adverse action against [him]; and (3) a causal connection existed between [his] opposition or protected activity and the adverse action taken against [him]." *Sampay v. Am. Univ.*, 294 A.3d 106, 114 (D.C. 2023). Plaintiff must plausibly allege **causation.** Specifically, that the relevant decisionmakers knew about protected activity and then acted because of that protected activity.

*See generally*, *Arencibia v. 2401 Rest. Corp.*, 831 F. Supp. 2d 164, 182 (D.D.C. 2011) (holding that plaintiff's termination was not retaliatory under the FLSA because "the individuals who terminated her could not have done so in retaliation for a complaint they did not know about.")[2]

Count V fails because the Complaint does not plausibly allege either (1) that any relevant decisionmaker knew of Plaintiff's alleged protected activity or (2) that the challenged actions were caused by protected activity rather than by Plaintiff's dispute with management.

**1. The Complaint does not plausibly allege decisionmaker knowledge of protected activity.**

The Complaint alleges that, in February 2023, Plaintiff spoke with then-General Counsel Anton van Sasse and raised concerns relating to employee stock-option rights. (Compl. ¶¶ 27-29.) Plaintiff claims that because of this particular disclosure, Defendants retaliated against him violation of the DC Wage Payment and Collection Law. (*Id.* at ¶ 97 (alleged protected conduct).) That retaliation came in the form of "changing the nature of his position and responsibilities, and later by terminating him on a pretextual claim of for-cause discharge." (*Id.* at ¶¶ 98-99.) But there are no facts to connect this disclosure with any of the alleged wrongful acts. The Complaint does not allege that Mr. van Sasse communicated those concerns to Mr. Kugelmass, to any member of management, to human resources, or to any other person involved in decisions affecting Plaintiff's employment. Nor does the Complaint clarify who allegedly reduced his responsibilities and role within the Company. A retaliation claim requires more than an allegation that protected activity occurred somewhere within the company; it requires facts plausibly showing that the alleged decisionmaker knew about that activity. Indeed, the Complaint affirmatively suggests the opposite.

[2] "[T]he D.C. Court of Appeals has looked to interpretations of the FLSA when evaluating claims brought under the DCWPCL." *District of Columbia v. Shipt, Inc.*, 2023 D.C. Super. LEXIS 28, at *12 (Aug. 30, 2023) (citing *Steinke v. P5Sols., Inc.*, 282 A.3d 1076, 1084 (D.C. 2022)); *see also Hicks v. Ass'n of Am. Med. Colleges*, 503 F. Supp. 2d 48, 51 (D.D.C. 2007) (applying FLSA anti-retaliation retaliation standard to retaliation claim arising under the D.C. wage payment laws).

Plaintiff alleges that he told Mr. van Sasse that Mr. Kugelmass would be "furious" if he learned of the complaint. (Compl. ¶ 29.) Yet the Complaint never alleges that Mr. Kugelmass actually learned of it. Nor does Plaintiff allege any facts supporting an inference of such knowledge. There is no allegation of any follow-up communication, no allegation that Mr. van Sasse reported the complaint, and no allegation that the substance of Plaintiff's concerns was shared with any decisionmaker.

The same defect applies to Plaintiff's allegation that he spoke with the acting general counsel on July 17, 2023 regarding those prior concerns. (Compl. ¶ 36.) Again, the Complaint does not allege that this conversation was relayed to Mr. Kugelmass or anyone involved in the subsequent termination decision. On the face of the Complaint, Count V lacks the required allegation of employer knowledge.

Even if Plaintiff had adequately alleged decisionmaker knowledge—which he has not—Count V still fails because the Complaint does not plausibly allege causation based on timing. The D.C. Wage Payment and Collection Law provides only a rebuttable presumption of retaliation where an employer takes adverse action within 90 days after protected activity, *see* D.C. Code § 32-1311, but Plaintiff's own allegations do not plausibly bring the challenged conduct within that framework as to his February 2023 complaint. Plaintiff alleges that he spoke with then-General Counsel Anton van Sasse in February 2023, yet the Complaint does not identify when his role was supposedly diminished and instead alleges that his termination occurred on July 18, 2023—months later and well outside any 90-day period tied to that February complaint. And although Plaintiff also alleges that he repeated his concerns to the acting General Counsel on July 17, 2023, the Complaint still pleads no facts connecting that conversation to any decisionmaker or supporting a plausible inference that the July 18 termination was caused by protected activity

rather than by the events Plaintiff alleges immediately followed his announced resignation and option-exercise request. Absent factual allegations tying the alleged protected activity to the relevant decisionmakers and bringing the claimed adverse action within a plausible causal chain, Plaintiff cannot rely on temporal proximity alone to salvage Count V.

### F. Count VI –Unjust Enrichment-- Fails Because Express Contracts Govern the Subject Matter of the Dispute

Count VI should be dismissed because District of Columbia law does not permit a plaintiff to pursue unjust enrichment where an express contract governs the very subject matter of the dispute. Unjust enrichment is a quasi-contract theory, available only in the absence of an enforceable agreement that defines the parties' respective rights and obligations. Where parties have elected to order their relationship through contract, courts do not disregard those bargained-for terms and impose different obligations under an equitable theory. The District of Columbia Court of Appeals has repeatedly enforced that principle, explaining that when a contract governs an aspect of the parties' relationship, the court will not displace the agreement and substitute duties the parties themselves did not choose. *Hall v. S. River Restoration, Inc.*, 270 F. Supp. 3d 117, 125 (D. D.C. 2017). Courts applying District of Columbia law therefore consistently dismiss unjust-enrichment claims that merely duplicate a contract dispute concerning the same alleged benefit, compensation, or performance.

That is exactly the case here. Plaintiff's own allegations foreclose any quasi-contract theory because he repeatedly pleads that express agreements governed the compensation and equity rights he now seeks to recover. The Complaint identifies the Offer Letter, the Equity Incentive Plan, the option grant, and related approvals as the binding instruments defining the terms of his employment compensation and his asserted right to exercise stock options. (Compl. ¶¶ 13-15, 64-65.) Indeed, Count I expressly alleges that those agreements imposed binding contractual

obligations on Defendants. (Compl. ¶ 65.) Thus, Plaintiff's theory is not that Defendants received a benefit in the absence of any governing agreement; it is that Defendants failed to provide compensation allegedly required by express contracts. That allegation sounds in contract and only in contract.

Count VI confirms as much. There, Plaintiff alleges that he conferred a benefit through his labor and services and that Last Energy unjustly retained that benefit while denying him equity compensation. (Compl. ¶¶ 103-105.) But those allegations concern the same subject matter as his contract claims: the compensation he claims he earned in exchange for his services, including the disputed stock-option rights. Plaintiff does not allege some extra-contractual benefit conferred outside the scope of the parties' agreements, nor does he identify any enrichment untethered from the contractual compensation structure he affirmatively pleads elsewhere in the Complaint. To the contrary, his unjust-enrichment theory depends entirely on the premise that his work entitled him to specific compensation under the governing employment and equity documents. Once Plaintiff alleges that those documents control, there is no room for quasi-contract.

Nor may Plaintiff preserve an unjust-enrichment claim by simply repackaging his contract theory in equitable terms. District of Columbia law bars that maneuver. A plaintiff cannot avoid the limitations of his contract claims, or seek a duplicative path to the same recovery, by alleging that the defendant was "unjustly enriched" by the same conduct that allegedly breached the parties' agreements. *See Whiting v. AARP*, 637 F.3d 355, 364 (D.C. Cir. 2011) ("[Plaintiff] acknowledges, however, that the survival of this [unjust enrichment] claim depends on the validity of her breach of contract or statutory claim . . . ."). Here, the alleged "benefit" retained by Last Energy is nothing more than the value of Plaintiff's services for which he contends he was not fully compensated

under the parties' agreements. That is not a free-standing unjust-enrichment claim; it is a contractual compensation dispute dressed in quasi-contract language.

In short, Plaintiff's own pleading establishes that express contracts govern the precise subject matter of Count VI: the compensation allegedly owed for his services, including the stock options he claims were wrongfully denied. Because District of Columbia law does not permit unjust enrichment to supplant or duplicate contractual remedies under those circumstances, Count VI fails as a matter of law and should be dismissed.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's fails to state a claim for any of the five Counts in the Complaint and the Court should dismiss the Complaint with prejudice.

September 8, 2026

Respectfully submitted,

LITTLER MENDELSON, P.C.

By: */s/ Meredith Schramm-Strosser*
Meredith Schramm-Strosser, Bar No. 1012077
Chelsie L. Smith, Bar No. 1614643
815 Connecticut Avenue, NW, Suite 400
Washington, DC 20006
MSchramm-Strosser@littler.com
CLSmith@littler.com
202.772.2531 telephone
202.330.5014 facsimile

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on September 8, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing systems, and served copies of the foregoing via email upon the following:

Rebecca S. LeGrand
LeGrand Law PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
(202) 587-5725
rebecca@legrandpllc.com

Scott Shuchart
Shuchart PLLC
5636 Connecticut Ave., NW #42289
Washington, DC 20015
(202) 527-9026
scott@shuchartlaw.com

*Counsel for Adam Zuckerman*

*/s/ Meredith Schramm-Strosser*