**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ADAM ZUCKERMAN,<br><br>*Plaintiff*,<br><br>v.<br><br>LAST ENERGY, INC., *et al.*,<br><br>*Defendants*. | Civil Action No. 1:26-cv-02837 (CJN) |

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

TABLE OF CONTENTS ..... i
TABLE OF AUTHORITIES ..... ii
INTRODUCTION ..... 1
SUMMARY OF THE FACTUAL ALLEGATIONS ..... 1
STANDARD OF REVIEW ..... 3
ARGUMENT ..... 4
I. Count I States a Claim for Breach of Contract. ..... 5
II. The Complaint Correctly Pleads Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II). ..... 8
III. Mr. Zuckerman Successfully Pleads a Claim for Fraudulent Misrepresentation (Count III). ..... 10
IV. The Statutory Wage Theft Claim Is Correctly Pled (Count IV). ..... 13
V. The Complaint States a Claim for Retaliation in Violation of the D.C. Wage Payment and Collection Law (Count V). ..... 15
VI. The Unjust Enrichment Claim (Count VI) Should Survive as an Alternative, In Case the Employment Agreement Proves Illusory. ..... 17
VII. Dismissal of Any Counts Should Be Without Prejudice, and With an Opportunity to Amend. ..... 17
CONCLUSION ..... 18

# TABLE OF AUTHORITIES

**Cases**

*Bautch v. Red Owl Stores, Inc.*, 278 N.W.2d 328 (Minn. 1979) .................................................. 10

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)........................................................................ 4, 9

*Bennett v. Kiggins*, 377 A.2d 57 (D.C. 1977) ................................................................... 12

*Billups v. Lab Corp. of America*, 233 F. Supp. 3d 20 (D.D.C. 2017) ...................................... 9, 10

*Butler v. Enter. Integration Corp.*, 459 F. Supp. 3d 78 (D.D.C. 2020) .....................................4, 11

*Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080 (D.C. 2008)...................................11, 13

*Firestone v. Firestone*, 76 F.3d 1205 (D.C. Cir. 1996)................................................................ 18

*Hais v. Smith*, 547 A.2d 986 (D.C. 1988) ........................................................................... 8

*Harbour v. Univ. Club of Wash.*, 610 F. Supp. 3d 123 (D.D.C. 2022).......................................... 15

*JFE Steel Corp. v. ICI Americas, Inc.*, 797 F. Supp. 2d 452 (D. Del. 2011)................................. 6

*Kayode v. Garland*, No. 1:22-cv-03802 (TNM), 2023 WL 8083638 (D.D.C. Nov. 21, 2023)..... 16

*Ludwig & Robinson, PLLC v. BiotechPharma, LLC,* 186 A.3d 105 (D.C. 2018) ........................ 13

*M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427 (2015) .......................................................... 7

*McWilliams Ballard, Inc. v. Broadway Mgmt. Co., Inc.*, 636 F. Supp. 2d 1 (D.D.C. 2009) ......... 12

*Mills v. Anadolu Agency NA, Inc.*, 105 F.4th 388 (D.C. Cir. 2024) ....................................... 13, 14

*Molock v. Whole Foods Market, Inc.*, 297 F. Supp. 3d 114 (D.D.C. 2018) .................... 5, 7, 12, 13

*Montesano v. Catholic Univ. of Amer.*, 548 F. Supp. 3d 6 (D.D.C. 2021) ..................................... 7

*Nevius v. Africa Inland Mission Int'l*, 511 F. Supp. 2d 114 (D.D.C. 2007) ................................. 17

*Paul v. Howard Univ.*, 754 A.2d 297 (D.C. 2000) ........................................................................ 8

*Pernice v. Bovim*, 183 F. Supp. 3d 84, 86 (D.D.C. 2016) ............................................................. 3

*Regency Comms., Inc. v. Cleartel Comms. Inc.*, 160 F. Supp. 2d 36 (D.D.C. 2001).................... 13

*Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122 (D.C. Cir. 2012)............................................... 18

*Ronaldson v. Nat'l Ass'n of Home Builders*, No. 19-cv-1034-CKK, 2021 WL 7210781 (D.D.C. June 3, 2021) ........ 14

*Rudder v. Williams*, 666 F.3d 790 (D.C. Cir. 2012) ........ 18

*Sivaraman v. Guizzetti & Assocs.*, 228 A.3d 1066 (D.C. 2020) ........ 14

*Sundberg v. TTR Realty, LLC*, 109 A.3d 1123 (D.C. 2015) ........ 8

*Va. Acad. of Clinical Psychologists v. Grp. Hospitalization & Med. Servs., Inc.*, 878 A.2d 1226 (D.C. 2005) ........ 11

*Vance v. Chao*, 496 F. Supp. 2d 182 (D.D.C. 2007) ........ 16

**Statutes**

D.C. Code § 32-1301 ........ 13

D.C. Code § 32-1308 ........ 14

D.C. Code § 32-1311 ........ 15, 16

**Rules**

Fed. R. Civ. P. 8 ........ 9

Fed. R. Civ. P. 9 ........ 4, 12

## INTRODUCTION

Defendants Last Energy, Inc. and its CEO, Bret Kugelmass, induced Plaintiff Adam Zuckerman to join the company as a senior executive with a promise of significant equity compensation. Mr. Zuckerman performed his part of the bargain: He ably performed his job functions and stayed with the company, in a deteriorating work environment, long enough for 78,189 of his stock options—worth at least $1.5 million today—to vest. Then, when he resigned from the company and sought to exercise those options, as was his contractual right, the Defendants induced him to delay exercising his options long enough to concoct a post-hoc excuse for firing him for "cause" in a transparent effort to deny Mr. Zuckerman the options he had earned.

After repeated efforts to reach a resolution with the Defendants, to no avail, Mr. Zuckerman filed suit in the Superior Court for the District of Columbia. ECF No. 1-2 (Complaint). The Complaint seeks relief based on six claims, sounding in breach of contract (Counts I and II); violations of the D.C. Wage Payment and Collection Law (Counts IV and V); and fraud and unjust enrichment (Counts III and VI). On August 11, 2026, Defendants removed this action to federal court based on diversity jurisdiction. ECF No. 1 (Notice of Removal). Defendants now move to dismiss all six of Plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. *See* Defendants' Motion to Dismiss (ECF No. 10). Defendants' motion should be denied because the Complaint sufficiently pleads each of its six counts.

## SUMMARY OF THE FACTUAL ALLEGATIONS

Plaintiff Adam Zuckerman was the eighth employee of Defendant Last Energy. Compl. ¶¶ 1, 18. The company offered Mr. Zuckerman a modest salary and significant equity compensation in the form of stock options vesting automatically in batches. *Id*. ¶¶ 2, 12. The 148,148 options granted to Mr. Zuckerman were not a discretionary bonus, but rather a core component of his

compensation paying out on a fixed schedule. *Id.* ¶¶ 13–16. As of his resignation in July 2023, about half of the options—78,189—had vested, but none had yet been exercised. *Id.* ¶ 17.

For over three years, Mr. Zuckerman performed valuable services as a senior leader at Last Energy, hearing regularly from the CEO, Defendant Bret Kugelmass, about the value of the company and the stock options he was earning. Compl. ¶¶ 18–22. Then things turned sour. Defendant Kugelmass mistreated other employees, and turnover spiked. *Id.* ¶¶ 23–24. Mr. Zuckerman also became aware of recurring issues concerning Last Energy employees' stock-option rights, including delays in processing requests to exercise vested options, and efforts to prevent employees from exercising vested options at all. *Id.* ¶ 25. This culminated in a heated argument between Mr. Zuckerman and Mr. Kugelmass in February 2023, when CEO Kugelmass told Mr. Zuckerman that, if he attempted to exercise his vested options, the company would terminate him the following day. *Id.* ¶ 26.

Mr. Zuckerman reported that threat to Last Energy's then-general counsel, explaining both the threat to fire him for exercising his options and his understanding that other employees *had* been prevented from exercising options. Compl. ¶¶ 27–28. Mr. Zuckerman feared that Mr. Kugelmass would be infuriated by his whistleblowing, and indeed shortly thereafter his work responsibilities were reduced; his client relationships transferred to more junior employees; and he was marginalized at critical meetings. *Id.* ¶¶ 30–32.

By July 2023, Mr. Zuckerman's situation at Last Energy had become untenable, and he tendered his resignation on July 17, 2023. Compl. ¶¶ 34–35. He also spoke to the (new) acting general counsel, reiterating his disclosures to the prior general counsel and his concerns that Mr. Kugelmass would retaliate against him. *Id.* ¶ 36. Last Energy accepted his resignation, and Mr. Zuckerman agreed to continue working for two weeks to allow for a smooth transition. *Id.* ¶¶ 36-

37. Finally, Mr. Zuckerman spoke to Mr. Kugelmass directly. Mr. Kugelmass accepted Mr. Zuckerman's resignation and agreed Mr. Zuckerman should continue working for two weeks to assist with the transition. *Id.* ¶¶ 38–39

The next day, July 18, Mr. Zuckerman submitted a request to exercise his vested options. Compl. ¶ 42. Under Last Energy's Equity Incentive Plan, Mr. Zuckerman had three months to exercise his vested options after his voluntary separation. *Id.* ¶ 41. But Mr. Kugelmass blocked Mr. Zuckerman from obtaining the options he had earned, just as he had blocked other employees from exercising stock options in the past, and as he had threatened to do to Mr. Zuckerman. *Id.* ¶ 43.

On the evening of July 18, Mr. Kugelmass sent Mr. Zuckerman an email stating Mr. Zuckerman was being terminated for cause. Compl. ¶¶ 45–46; Compl. Ex. E (termination email) (ECF No. 1-2 at 64). Mr. Kugelmass claimed the company had "conducted a further inquiry" after Mr. Zuckerman's resignation, and found "repeated violations of the Company's IT policy," therefore his "employment with the Company is being terminated for Cause as defined in Section 2.5(ii) of the Company's 2018 Equity Incentive Plan, effective immediately." *Id.* ¶ 46. On August 21, 2023, more than a month after Mr. Zuckerman announced his resignation and submitted a request to exercise his vested options, Last Energy cancelled Mr. Zuckerman's vested options, listing "terminated for cause" as the reason. *Id.* ¶ 56; Compl. Ex. F (option exercise cancellation) (ECF No. 1-2 at 66).

## STANDARD OF REVIEW

"In evaluating a motion to dismiss, the Court must treat the complaint's factual allegations as true and must grant plaintiff the benefit of all inferences that can be derived from the facts alleged." *Pernice v. Bovim*, 183 F. Supp. 3d 84, 86 (D.D.C. 2016) (internal quotation marks and citation omitted). To survive a motion to dismiss, a "claim to relief must be 'plausible on its face,'

enough to 'nudge[ the] claims across the line from conceivable to plausible.'" *Butler v. Enter. Integration Corp.*, 459 F. Supp. 3d 78, 90 (D.D.C. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Claims sounding in fraud must also "state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "The circumstances that must be pleaded with specificity are matters such as the time, place, and contents of the false representations, such representations being the element of fraud about which the rule is chiefly concerned." *Butler*, 459 F. Supp. 3d at 90 (internal quotation marks, alteration, and citations omitted).

Accordingly, so long as Plaintiff has set forth a "short and plain statement showing that the pleader is entitled to relief," *Twombly*, 550 U.S. at 555—and with respect to fraud, "with particularity the circumstances constituting fraud or mistake," Fed. R. Civ. P. 9(b)—the motion to dismiss must be denied.

**ARGUMENT**

The Complaint properly pleads each of its six counts: Counts I and II, for breach of contract and breach of the implied covenant of good faith and fair dealing, when Last Energy fired Mr. Zuckerman for a pretextual and baseless "Cause" and refused to honor his options exercise; Count III, fraudulent misrepresentation, when Defendants misled Mr. Zuckerman by, among other things, purporting to accept his voluntary resignation while they concocted a pretextual excuse to terminate him for cause; Counts IV and V, for violations of the D.C. Wage Payment and Collection Law, based on Defendants' failure to provide Mr. Zuckerman the compensation he was owed, and for retaliation; and Count VI, for unjust enrichment. All six of Mr. Zuckerman's claims are supported by specific factual allegations that are more than sufficient to overcome the relevant pleading standard.

## I. Count I States a Claim for Breach of Contract.

"[T]o state a claim for breach of contract so as to survive a Rule 12(b)(6) motion to dismiss, it is enough for the plaintiff to describe the terms of the alleged contract and the nature of the defendant's breach." *Molock v. Whole Foods Market, Inc.*, 297 F. Supp. 3d 114, 131 (D.D.C. 2018) (emphasis, quotation marks, and citation omitted). Count I properly states a claim for breach of contract because the Complaint describes both the terms of the contract and the nature of defendant's breach.

The Complaint explains that Last Energy breached its agreement with Mr. Zuckerman when it prevented Mr. Zuckerman from exercising vested options by falsely claiming he was terminated for cause on the same day that he sought to exercise his options. *See* Compl. ¶ 67 ("Last Energy breached those agreements by wrongly claiming Mr. Zuckerman was terminated for cause, cancelling his timely exercise request, and refusing to permit him to exercise the 78,189 options that had vested before his resignation."). Those allegations show that Last Energy breached its agreement with Mr. Zuckerman in at least two ways.

**First**, Last Energy breached the agreement when it claimed to terminate Mr. Zuckerman for cause based on Section 2.5(ii) of the Company's 2018 Equity Incentive Plan, even though Mr. Zuckerman did not engage in conduct defined in Section 2.5 of the Plan. The Equity Incentive Plan lists eight events that qualify as "Cause." Compl. Ex. B (Equity Incentive Plan) at § 2.5 (ECF No. 1-2 at 34). One of those events is: "any failure by the Participant to comply with the Company's material written policies or rules as they may be in effect from time to time." *Id.* § 2.5(ii). Last Energy told Mr. Zuckerman that he was being terminated for cause based on "repeated violations of the Company's IT policy." Compl. ¶ 46. But Mr. Zuckerman alleges that he *did not* engage in "repeated violations of the Company's IT policy," or any material written policies, as required to

terminate him for cause. Compl. ¶ 47. Those allegations are more than sufficient to plausibly support a claim for breach of contract.

In an effort to avoid that conclusion, Last Energy tries to argue that it does not matter whether Mr. Zuckerman actually violated a company IT policy, or any policy at all, because the company had the sole discretion to decide whether Mr. Zuckerman was terminated with or without cause. But that argument is unavailing.

Last Energy claims that it had the right to terminate Mr. Zuckerman for "Cause" as defined in the Equity Incentive Plan at any time, regardless of whether cause actually existed. But that is not what the agreement says. The Equity Incentive Plan includes a detailed definition of the eight events that qualify as "Cause." Compl. Ex. B § 2.5 (ECF No. 1-2 at 34). Defendants argue that those definitions mean nothing, because the Equity Incentive Plan also states that "[t]he determination that a termination of the Participant's Service is either for Cause or without Cause will be made by the Company, in its sole discretion." ECF No. 10-1 at 6 (quoting Compl. Ex. B). But that is not a reasonable interpretation of the agreement.

Contracts are construed to give each provision meaning. *See*, *e.g.*, *JFE Steel Corp. v. ICI Americas, Inc.*, 797 F. Supp. 2d 452, 469 (D. Del. 2011) (contracts are read as a whole to "give each provision and term effect, so as not to render any part of the contract mere surplusage") (quotation marks and citation omitted). It is not reasonable to interpret the generic "sole discretion" language that Last Energy relies on as negating the detailed definition of "Cause" that precedes it.

The interpretation advanced by the Defendants would improperly render all of the rest of the lengthy definition set forth in Section 2.5 of the Equity Incentive Plan surplusage. That approach is not supported by the law. Courts applying D.C. law, for example, regularly find that generic reservation-of-rights language in a contract does not permit "*any and all* changes

imaginable" to performance under the contract. *Montesano v. Catholic Univ. of Amer.*, 548 F. Supp. 3d 6, 10 (D.D.C. 2021). Interpreting generic catch-all language to provide a contracting party with boundless discretion "would render promises illusory," and that approach is routinely rejected. *Id.* at 10-11 (quoting *M&G Polymers USA, LLC v. Tackett*, 574 U.S. 427, 440 (2015)).

**Second**, and separately, Last Energy breached its agreement by revoking Mr. Zuckerman's vested options, even though Mr. Zuckerman sought to exercise his options on July 18, 2023, the same day that he was purportedly terminated for cause shortly after the close of business. Under the Last Energy Equity Incentive Plan, "[i]f a participant's service is terminated for Cause, the Participant's right to exercise an Option shall terminate immediately on the effective date of the Participant's termination[.]" Compl. Ex. B § 7.7 (ECF No. 1-2 at 42). Mr. Zuckerman was terminated at 6:18 p.m. on July 18, 2023, after working a full day. Compl. Ex. E (ECF No. 1-2 at 64). His effective date of termination could not have been July 18, 2023, since he provided a full day of services to Last Energy on July 18, 2023.

Even if Mr. Zuckerman could have been terminated for cause as Last Energy claims, the effective date of his termination would have been, at the earliest, July 19, 2023, the first day that he was no longer asked to work. Last Energy thus also breached its agreement by purporting to cancel Mr. Zuckerman's options on July 18, 2023, when Mr. Zuckerman's termination could not have been effective until, at the earliest, July 19, 2023.

The allegations set forth in the Complaint provide detailed support for at least those two breaches of contract. The Complaint describes both the terms of the contract and the nature of defendant's breaches, and that is all that is needed at the motion to dismiss stage. *See Molock*, 297 F. Supp. 3d at 131 ("[T]o state a claim for breach of contract so as to survive a Rule 12(b)(6)

motion to dismiss, it is enough for the plaintiff to describe the terms of the alleged contract and the nature of the defendant's breach.").

## II. The Complaint Correctly Pleads Breach of the Implied Covenant of Good Faith and Fair Dealing (Count II).

Mr. Zuckerman has surely adequately alleged breach of the implied covenant of good faith and fair dealing. Under D.C. law, "[N]either party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." *Hais v. Smith*, 547 A.2d 986, 987 (D.C. 1988). "If a party to the contract evades the spirit of the contract, willfully renders imperfect performance, or interferes with performance by the other party, he or she may be liable for breach of the implied covenant of good faith and fair dealing." *Paul v. Howard Univ.*, 754 A.2d 297, 310 (D.C. 2000) (summarizing *Hais*). A pretextual, retroactive invention of an immaterial breach for violation of a likely nonexistent policy, to keep Mr. Zuckerman from receiving compensation for work already performed, is just such a circumstance.

"To state a claim for breach of the implied covenant of good faith and fair dealing, a plaintiff must allege either bad faith or conduct that is arbitrary and capricious." *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1133 (D.C. 2015) (quotation marks and citation omitted). This is precisely the gravamen of Plaintiff's Complaint. *See* Compl. ¶¶ 48, 49, 51, 57, 71. Defendant Kugelmass had threatened since at least February 2023 to deprive Mr. Zuckerman of the value of his vested options should he leave the company, Compl. ¶ 26, and he had fired other employees in circumstances similarly involving abuse of the termination for cause provision, Compl. ¶ 25. Mr. Zuckerman took those worries to Last Energy's general counsel, Compl. ¶ 28, and he reiterated them to the successor general counsel the day he resigned, Compl. ¶ 36. Despite those warnings, Mr. Kugelmass was allowed to again do what Mr. Zuckerman had feared: He concocted a pretext to fire Mr. Zuckerman for cause, after accepting his resignation. Those allegations demonstrate a

bad-faith effort to evade the spirit of a contract and readily satisfy the requirements of Federal Rule of Civil Procedure 8 and cases like *Twombly*.

Last Energy argues that because the contract states the company has "sole discretion" to determine if termination is for cause, Last Energy could exercise that discretion however it saw fit, no matter how arbitrary or capricious its actions, or whether they were taken in bad faith. The implied covenant of good faith and fair dealing is designed to prevent exactly that sort of abuse, and it squarely applies here. It does not conflict with the definition of "Cause" to require Last Energy to act in good faith, and apply the language of the agreement consistently, not arbitrarily and capriciously.

*Billups v. Lab Corp. of America*, 233 F. Supp. 3d 20, 25-26 (D.D.C. 2017), relied on by Last Energy, is not to the contrary. That case involved a motion to dismiss a salesman's complaint for breach of a compensation agreement when his employer changed the geographic territory from which he received commissions. LabCorp had specifically "reserve[d] the right" to alter sales territories, and had "sole and exclusive discretion to determine whether" a salesperson "should be denied incentive compensation." *Id.* Those terms are far more specific and objectively applicable than the broad, residual "sole discretion" to determine "Cause" clause that Defendants now argue should be allowed to trump the specific definitions of "Cause" on which the parties agreed. *Cf. id.* at 25 ("LabCorp's action is plainly contemplated by the express terms of the Plan[.]"). Thus it was not contrary to the "spirit" of that discretionary employment agreement for the employer to adjust the basis for discretionary compensation from time to time. (Moreover, Billups did not raise an implied covenant claim at all until his Rule 12(b)(6) opposition brief, when it was denied as raising a claim that would "conflict" with the express contract terms. *Id.* at 26.) Here, Mr. Zuckerman is not seeking to "negate" a term of the contract, but simply to have discretion used in the good faith

that is demanded by every contracting party. *Cf. id.* at 26 (express discretion to alter territories meant doing so could not violate the implied covenant).

Moreover, even if there was an IT policy, and even if it purported to prohibit anything Mr. Zuckerman did with his personal phone and computer while performing his job functions, the Complaint adequately alleges that such deviation from policy was authorized by Mr. Kugelmass and others at the company. For example, when Mr. Zuckerman used his personal cell phone for company calls when traveling abroad, he was directed to, and did, submit his international bills for company reimbursement. Compl. ¶ 53. Last Energy's "sole discretion" in determining "Cause" cannot be read to encompass deviations from policy that the company had plainly ratified. *See, e.g.*, *Bautch v. Red Owl Stores, Inc.*, 278 N.W.2d 328, 331 (Minn. 1979) (affirming that employee's termination for consuming store's food was wrongful, where management regularly allowed employees to do so). These allegations are sufficient, at the pleading stage, to support Mr. Zuckerman's contention that there was no good-faith basis to determine he had violated an IT policy, even assuming any such thing existed. *Cf.* Compl. ¶ 54.

## III. Mr. Zuckerman Successfully Pleads a Claim for Fraudulent Misrepresentation (Count III).

The Complaint provides detailed allegations that support a claim for fraudulent misrepresentation. In particular, the Complaint details how the Defendants falsely led Mr. Zuckerman to believe that he would be allowed to resign voluntarily, and encouraged him to continue working for two weeks after he announced his resignation on July 17, 2023. Compl. ¶¶ 37–39. Those false representations caused Mr. Zuckerman to continue working for Last Energy on July 18, 2023, instead of rushing to exercise his vested options and ceasing work immediately. The Defendants' false assurances gave Mr. Kugelmass time to concoct an excuse for firing Mr. Zuckerman for cause, in order to deprive Mr. Zuckerman of the vested options he had earned.

Mr. Zuckerman agreed in good faith to work for Last Energy for two more weeks after announcing his resignation, in reliance on the Defendants' representations that his resignation had been amicably accepted. Defendants then used that time to concoct a post-hoc pretext to terminate Mr. Zuckerman for cause. Defendants' false statements when Mr. Zuckerman announced his resignation were intended to deprive Mr. Zuckerman of the vested stock options he had earned. Last Energy could not terminate Mr. Zuckerman for cause after he no longer worked there, so Last Energy encouraged Mr. Zuckerman to keep working while it concocted pretextual cause to terminate him. Last Energy's false assurances also delayed Mr. Zuckerman from exercising his options sooner, before Last Energy could (wrongly) claim they were terminated. He was therefore defrauded of the opportunity to exercise his options *even if* Last Energy had properly fired him for "Cause."

Defendants are of course correct that a breach of contract does not of itself constitute fraud. But neither is it the case that a contract between two parties *precludes* an action for fraud coincident with the collapse of the contractual relationship. Mr. Zuckerman has pleaded, plausibly and in detail, what D.C. requires: a "tort [that] must exist in its own right independent of the contract." *Choharis v. State Farm Fire & Cas. Co.*, 961 A.2d 1080, 1089 (D.C. 2008). "[C]onduct occurring during the course of a contract dispute may be the subject of a fraudulent or negligent misrepresentation claim when there are facts separable from the terms of the contract upon which the tort may independently rest. . . ." *Id.* A claim for fraud may stand alongside a claim for breach of contract, when, for example, "the promise to perform on the contract is itself fraudulent, 'if at the time of its making, the promisor had no present intention of carrying it out[.]'" *Butler*, 459 F. Supp. 3d at 96 (quoting *Va. Acad. of Clinical Psychologists v. Grp. Hospitalization & Med. Servs., Inc.*, 878 A.2d 1226, 1234 (D.C. 2005)).

"When a person positively states that something is to be done or is to occur, when he knows the contrary to be true, the statement will support an action in fraud." *Bennett v. Kiggins*, 377 A.2d 57, 61 (D.C. 1977). That is what the Complaint alleges: Defendant Kugelmass said he would accept Mr. Zuckerman's voluntary resignation with two weeks of transition, when he knew he would be adducing a pretext to fire Mr. Zuckerman for cause. The Complaint is not merely speculating on that point. Instead, the Complaint explains that Mr. Kugelmass engaged in a long-running scheme to deprive Last Energy employees of their vested options by manipulating the circumstances of their departure, and points to specific threats by Mr. Kugelmass to do just that. Compl. ¶¶ 25–26, 36. The Complaint's description of a fraudulent scheme to wrongfully deprive Mr. Zuckerman and other employees of property and inflict additional damages readily satisfies the particularity requirement set forth in Rule 9(b). *See McWilliams Ballard, Inc. v. Broadway Mgmt. Co., Inc.*, 636 F. Supp. 2d 1, 6 (D.D.C. 2009).

The contract and fraud claims rely on different facts, arise from different duties, and reach different conduct. This case thus tracks the analysis in *Molock v. Whole Foods Market, Inc.*, 297 F. Supp. 3d 114 (D.D.C. 2018), a class-action challenge to the bonus system at a grocery store chain. The chain admitted that nine store managers had manipulated the bonus system for their personal benefit, at the expense of the employees, but denied a larger policy of deviating from the bonus system. At the Rule 12(b)(6) stage, Judge Mehta allowed both a breach-of-contract claim, based on the bonus system calculation presented to the employees, *id.* at 131, and a fraud claim based on inducement to join the company based on knowingly-false representations *about* the bonus system, *id.* at 135-36.

*Molock* allowed the fraud-in-the-inducement theory because it involved behavior (entering into the contract) that the plaintiffs "would not have otherwise" engaged in. *Id.* at 136 (quotation

marks and citation omitted). Mr. Zuckerman's decision to continue working for Last Energy—instead of rushing to exercise his options—in reliance on the Defendants' false assurances that he was being allowed to leave voluntarily is similarly a separate action outside the contract. *Cf. id.* (distinguishing "the specific behavior the contract required" from the surviving fraud allegations (quoting *Regency Comms., Inc. v. Cleartel Comms. Inc.*, 160 F. Supp. 2d 36, 41-42 (D.D.C. 2001)). The same principle can be found in *Ludwig & Robinson, PLLC v. BiotechPharma, LLC,* 186 A.3d 105, 110 (D.C. 2018), which allowed both a breach and fraud theory to proceed. In *Ludwig & Robinson*, a law firm client had both failed to pay its bills and fraudulently misrepresented that payment would be coming from a nonexistent line of credit. Telling the truth to Mr. Zuckerman about whether his voluntary resignation was accepted was an "independent 'duty imposed by law' not to commit fraud, a duty not 'arising by virtue of the alleged express agreement between the parties.'" *Id.* (citations omitted). Therefore it gives rise to separate fraud liability.

The fraud and contract claims also involve distinct claims for damages, which the District recognizes as key to allowing a tort claim related to breach. *See Ludwig & Robinson*, 186 A.3d at 109-110 & n.3 (explaining and expanding discussion in *Choharis*, 961 A.2d at 1089-90). The contract claim seeks the value of the options Mr. Zuckerman was promised and a favorable tax treatment opportunity that Mr. Zuckerman was deprived of. Compl. ¶¶ 68, 72. The fraud claim seeks the lost value of the options and damages Mr. Zuckerman suffered because he was forced to respond to the Defendants' fraud as well as punitive damages. Compl. ¶¶ 81–82. Accordingly, Count III should survive dismissal.

## IV. The Statutory Wage Theft Claim Is Correctly Pled (Count IV).

District of Columbia law provides especially robust protections against wage theft under its Wage Payment and Collection Law (DCWPCL). D.C. Code §§ 32-1301 to 1312; *see generally Mills v. Anadolu Agency NA, Inc.*, 105 F.4th 388, 393-94 (D.C. Cir. 2024) (describing breadth of

statutory coverage); *Sivaraman v. Guizzetti & Assocs.*, 228 A.3d 1066, 1071-72 (D.C. 2020) (same). Under the statute, liquidated damages of stolen wages, *plus* treble damages and attorney fees, are mandatory. D.C. Code § 32-1308(a)(1)(A), (b)(1); *see generally Sivaraman*, 228 A.3d at 1072.

Defendants make only a wan attempt to dismiss the statutory wage theft count, repeating their contract argument that Last Energy had untrammeled discretion to invent "Cause," ergo no breach and nothing is owed. ECF No. 10-1 at 16-17. Of course it is trivially true that if no wages were owed in the first place, they could not be stolen, but the statute could not be clearer that "remuneration . . . [p]ursuant to a contract for employment" is covered. Indeed, discouraging employers' breach of employment contracts is a significant public policy that the DCWPCL advances. *See Mills*, 105 F.4th at 393. And at the pleading stage, it is enough that Mr. Zuckerman had "some 'contractual or other understanding'" with Last Energy "under which" it "owed" the value of the exercised options. *See Ronaldson v. Nat'l Ass'n of Home Builders*, No. 19-cv-1034-CKK, 2021 WL 7210781 at *4 (D.D.C. June 3, 2021) (reconsidering dismissal of DCWPCL claim).

The stock options here were a non-contingent part of Mr. Zuckerman's base compensation, exercisable in tranches over time such that 78,189 were vested as of July 18, 2023. Compl. ¶ 17. If he is right that those options were exercisable upon his departure and Last Energy wrongfully deprived him of that part of the benefit of his bargain, then their value constituted wages wrongfully withheld under the D.C. statute. At the pleading stage, that more than suffices. *See Ronaldson*, 2021 WL 7210781 at *4.

## V. The Complaint States a Claim for Retaliation in Violation of the D.C. Wage Payment and Collection Law (Count V).

Mr. Zuckerman has also properly pled a claim for retaliation in violation of the DCWPCL, based on his reports regarding Defendant Kugelmass's threats to deny Mr. Zuckerman and other employees the compensation they had earned.

Under the DCWPCL, it is unlawful for an employer "to discharge, threaten, penalize, or in any other manner discriminate or retaliate against" an employee because the employee "made a complaint to his or her employer" regarding "conduct that the employee, reasonably and in good faith, believes violates any provision of this chapter [the DCWPCL]." D.C. Code § 32-1311(a). To state a claim of retaliation under the DCWPCL, a plaintiff must allege that (1) he engaged in statutorily protected activity, (2) his employer took an adverse personnel action against him, and (3) a causal connection between the two exists. *See Harbour v. Univ. Club of Wash.*, 610 F. Supp. 3d 123, 135 (D.D.C. 2022). The DCWPCL creates a rebuttable presumption of retaliation when an employer takes adverse action against an employee within 90 days of an employee's protected disclosure. D.C. Code § 32-1311(b).

The Complaint states that Mr. Zuckerman engaged in protected activity in February 2023, when he informed Last Energy's general counsel that Defendant Kugelmass was wrongfully preventing employees from obtaining the vested stock options they had earned (Compl. ¶¶ 26–28), and again on July 17, 2023, when Mr. Zuckerman repeated those concerns to Last Energy's new general counsel (Compl. ¶ 36). The Complaint also explains that Last Energy diminished Mr. Zuckerman's job responsibilities shortly after his February 2023 disclosure (Compl. ¶¶ 30–31), and then wrongfully terminated him for cause one day after his July 17, 2023 disclosure to Last Energy's new general counsel (Compl. ¶ 45).

The Defendants do not dispute that those allegations meet the first two requirements for a retaliation claim: (1) engaging in statutorily protected activity; and (2) subsequent adverse personnel actions. Instead, the Defendants argue only that the Complaint fails to sufficiently allege the third requirement, causation. *See* ECF No. 10-1 at 18. That argument fails because it relies on a significant overstatement of a plaintiff's burden at the motion to dismiss stage, and because it ignores specific factual allegations regarding causation.

First, Defendants wrongly argue that the Complaint does not support a presumption of retaliation after Mr. Zuckerman's February 2023 disclosure, because the Complaint does not state when Mr. Zuckerman's role was diminished. *See* ECF No. 10-1 at 19. But the Complaint in fact specifically alleges that Mr. Zuckerman's job responsibilities were diminished within 90 days of his protected disclosure. *See* Compl. ¶ 99 (alleging Mr. Zuckerman's job duties were diminished within 90 days of his protected disclosure); *id*. ¶ 30 (explaining "[s]oon after his [February 2023] call with the general counsel, Mr. Zuckerman's role was diminished and responsibilities were shifted away from him"). Those allegations create a presumption of retaliation under D.C. Code § 32-1311(b).

The Defendants also significantly overstate the standard for pleading a retaliation claim. The Defendants argue that Mr. Zuckerman failed to provide sufficient support for the causation element of his retaliation claim. *See* ECF No. 10-1 at 18-19. But the bar for pleading causation is rightfully low at the motion to dismiss stage, when plaintiffs have not had the benefit of discovery. *See Kayode v. Garland*, No. 1:22-cv-03802 (TNM), 2023 WL 8083638, at *6 (D.D.C. Nov. 21, 2023) (citing *Vance v. Chao*, 496 F. Supp. 2d 182, 187 (D.D.C. 2007)). At the motion to dismiss stage, a plaintiff "can meet her *prima facie* burden of causation simply by alleging that the adverse actions were caused by her protected activity." *Vance,* 496 F. Supp. 2d at 187. The Complaint easily

meets that standard. *See*, *e.g.*, Compl. ¶ 98 ("Defendants retaliated against Plaintiff for making that protected complaint, penalizing Mr. Zuckerman both by adversely changing the nature of his position and responsibilities, and later by terminating him on a pretextual claim of for-cause discharge.").

The Complaint explains that the Defendants retaliated against Mr. Zuckerman after he reported concerns regarding Mr. Kugelmass's efforts to prevent employees from receiving the vested stock options they had earned. Those allegations are more than sufficient to state a claim for retaliation in violation of the DCWPCL.

## VI. The Unjust Enrichment Claim (Count VI) Should Survive as an Alternative, In Case the Employment Agreement Proves Illusory.

Count VI properly pleads unjust enrichment as an alternative claim in the event that claims premised on contract fail, and to reach additional damages based on the Defendants' unfair retention of benefits provided by Mr. Zuckerman. Courts routinely allow alternative contentions like these to survive the pleading stage. *See, e.g.*, *Nevius v. Africa Inland Mission Int'l*, 511 F. Supp. 2d 114, 122 n.6 (D.D.C. 2007) ("Pleading in the alternative is permissible under the Federal Rules of Civil Procedure, and a court must look beyond how a complaint is styled to determine if facts support any claim for relief under a theory of breach of contract or unjust enrichment." (internal quotation marks and citation omitted)). That is particularly true when, as here, the Defendants contest that they had a contractual obligation to provide a benefit to the plaintiff. Therefore, the unjust enrichment claim should survive the motion to dismiss.

## VII. Dismissal of Any Counts Should Be Without Prejudice, and With an Opportunity to Amend.

Defendants assert without argument that the Complaint should be dismissed with prejudice. It should not be. In general, a 12(b)(6) dismissal should be without prejudice, unless "a trial court determines that the allegations of other facts consistent with the challenged pleadings could not

possibly cure the deficiency." *Firestone v. Firestone*, 76 F.3d 1205, 1209 (D.C. Cir. 1996) (internal quotation marks and citation omitted). Hence "[d]ismissal with prejudice is the exception, not the rule, in federal practice . . . ." *Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012). Moreover, "The court should freely give leave" to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Rollins v. Wackenhut Servs., Inc.*, 703 F.3d 122, 132 (D.C. Cir. 2012) (Kavanaugh, J., concurring) ("[U]nder Rule 15(a), a district court in its discretion also may grant leave for a plaintiff to amend a complaint even outside the time period for amending as a matter of course," including after 12(b)(6) dismissal). While Mr. Zuckerman's complaint adequately pleads each cause of action, any deficiencies the Court identifies are of the kind that can be cured with more specific pleading.

## CONCLUSION

Defendants' motion should be denied. If it is granted in any respect, dismissal should be without prejudice, with Plaintiff granted leave to amend.

Respectfully Submitted,

/s/ Rebecca S. LeGrand
Rebecca S. LeGrand (D.C. Bar 493918)
LeGrand Law PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
Phone: (202) 587-5725
rebecca@legrandpllc.com

Scott Shuchart (DC Bar 1531377)
Shuchart PLLC
5636 Connecticut Ave., NW #42289
Washington, DC 20015
Phone: (202) 527-9026
scott@shuchartlaw.com

*Counsel for Adam Zuckerman*