**IN UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **ADAM ZUCKERMAN**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**LAST ENERGY, INC., *et al.*,**<br><br>**Defendants.** | **Civil Action No. 1:26-cv-02837-CJN** |

**DEFENDANTS' REPLY IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

Defendants Last Energy, Inc. ("Last Energy") and Bret Kugelmass ("Mr. Kugelmass") (collectively "Defendants"), respectfully submit this Reply in further support of their Motion to Dismiss Plaintiff Adam Zuckerman's ("Plaintiff") Complaint pursuant to Federal Rule of Civil Procedure Rule 12(b)(6) for failure to state a claim.

## I. INTRODUCTION

Plaintiff's Opposition does not cure the fundamental defects in his Complaint. Instead, it confirms that each of Plaintiff's six claims rests on the same legally deficient premise: that Plaintiff may avoid the express terms of Last Energy's Equity Incentive Plan by alleging that he disagrees with the Company's determination that his termination was for Cause.

The Plan expressly provides that the Company will determine, "in its sole discretion," whether a participant's termination is for Cause or without Cause. (Compl. Ex. B § 2.5.) It further provides that, upon a termination for Cause, the participant's right to exercise an option "shall terminate immediately on the effective date" of termination. (*Id.* § 7.7.) Plaintiff does not dispute that these provisions govern his options. Nor does he identify any contractual provision restricting

the Company's authority to make the Cause determination at issue. He instead asks the Court to infer that the determination was pretextual, notwithstanding the Plan's express language and the written termination notice identifying repeated violations of the Company's IT policy as the basis for the decision.

Plaintiff's effort to avoid these provisions fails for several independent reasons. First, Plaintiff's contract claim does not identify any promise Last Energy failed to perform. His Opposition improperly treats the Plan's definition of "Cause" as a factual dispute – as though it assigns the ultimate Cause determination to a court rather than, as the Plan expressly states, to the Company in its sole discretion. Second, Plaintiff's implied-covenant claim seeks to impose limitations on Last Energy's discretion that the parties did not place in their agreement. Third, the fraud claim remains an impermissible duplication of the contract claim. The supposed misrepresentation concerned Plaintiff's employment status and the consequences of his separation under the same agreements on which his contract claims depend. Fourth, despite arguments to the contrary, the wage claim is still entirely derivative of Plaintiff's unsuccessful contract theory. Fifth, Plaintiff's retaliation claim fails because the Complaint does not plausibly allege that any relevant decisionmaker had knowledge of Plaintiff's purportedly protected communications despite the allegations of temporal proximity. Finally, Plaintiff cannot proceed with an unjust enrichment claim while simultaneously alleging that valid, enforceable contracts govern the same compensation and services at issue.

For these reasons, the Complaint should be dismissed.

## II. ARGUMENT

### A. Plaintiff's Complaint and Opposition Fail to State a Claim for Breach of Contract

Plaintiff's Opposition does not identify an unperformed contractual obligation. Instead, Plaintiff asks the Court to disregard the provision assigning the "Cause" determination to the Company in its "sole discretion" and to decide for itself whether Cause existed. That is not what the parties' agreement provides.

To state a claim for breach of contract, Plaintiff must plead facts showing not merely that he disagrees with Last Energy's decision, but that Last Energy violated a specific contractual obligation. *See Logan v. Lasalle Bank Nat'l Ass'n*, 80 A.3d 1014, 1023-24 (D.C. 2013) ([Appellant] identifies neither a governing contractual provision, nor an action or omission constituting a material breach. . .. Such a pleading is not sufficient to place appellees on notice of the claims against them, making dismissal under Rule 12 (b)(6) proper.").

Plaintiff cannot show Last Energy violated a specific contractual obligation because the incorporated documents establish that:

- the Plan defined conduct that could constitute Cause;
- the Plan assigned the determination of whether a termination was for Cause to the Company, in its sole discretion;
- Last Energy determined that Plaintiff had repeatedly violated a material written policy;
- the Plan identified failure to comply with material written policies as a basis for Cause; and
- the Plan terminated the right to exercise options immediately upon a for-Cause termination.

*See* Compl. Ex. B §§ 2.5(ii), 7.7; Compl. Ex. E.

### 1. Plaintiff's interpretation improperly reads "sole discretion" out of the Plan.

Plaintiff argues that enforcing the Company's sole discretion would render the Plan's definition of Cause surplusage. (Opp. at 6-7.) That argument presents a false choice. The definition of Cause identifies the categories of conduct that can support a Cause determination. The "sole discretion" provision identifies who determines whether particular conduct falls within those categories, as well as who can make the decision to terminate and the decision of when to do so. The provisions therefore perform separate and complementary functions.

Under Defendants' interpretation, Section 2.5(ii) of the Plan limits the relevant category of misconduct to the failure to comply with a material written policy or rule, while the sole-discretion clause of that Section assigns to the Company the judgment whether the participant's conduct constitutes such a failure, and whether termination should be implemented for the failure. (*See* Compl. Ex. B at § 2.5(ii).) Neither provision is superfluous, nor contradictory. Plaintiff's interpretation, by contrast, deprives "sole discretion" of meaningful effect. If a participant can overcome the Company's Cause determination merely by alleging that the stated basis was incorrect or unfair, then the Company possesses no materially different authority than it would have possessed if the Plan omitted the sole-discretion clause entirely. Courts do not interpret contracts in a manner that renders express language meaningless. *DCA Capitol Hill LTAC, LLC v. Capitol Hill Grp.*, 332 A.3d 518, 530 (D.C. 2025) (courts "assess the contract's plain language, giving reasonable effect to the contract's parts and avoiding an interpretation that would render any part of it meaningless or incompatible with the contract as a whole") Nor may a court revise the parties' agreement to provide a protection that the participant did not bargain for. *Id.* ("We analyze disputed terms in light of 'what a reasonable person in the position of the parties would have thought the disputed language meant.'" (quoting *BSA 77 P St. LLC v. Hawkins*, 983 A.2d

988, 993 (D.C. 2009))). "Courts give 'the language used its plain meaning' and 'will not torture words to import ambiguity' where there is none." *Largan Precision Co. v. LLP*, 610 F. Supp. 3d 209, 214 (D.D.C. 2022) (quoting *Tillery v. Dist. Of Colum. Contract Appeals Bd.*, 912 A.2d 1169, 1176 (D.C. 2006) and *Bragdon v. Twenty-Five Twelve Assocs. Ltd.*, 856 A.2d 1165, 1170 (D.C. 2004)).

The cases cited in the Opposition do not establish otherwise. *Montesano v. Catholic University of America* involved whether general reservation-of-rights language rendered a separate contractual promise illusory. 548 F. Supp. 3d 6, 10-11 (D.D.C. 2021). Plaintiff's claim here presents a different issue. The Plan does not contain a *generic* reservation allowing Last Energy to change any term at any time. It expressly assigns a specific determination, *i.e.*, whether a termination is for Cause, to the Company in its sole discretion. Enforcing that provision does not eliminate the Plan's other terms. It gives effect to the parties' express designation of the decisionmaker. Plaintiff's cited case law does not permit the Court to disregard express language merely because one party considers its operation harsh.

**2. Plaintiff's "effective date" theory is unsupported by the Plan, the Complaint, or case law.**

Plaintiff separately argues that his termination could not have been effective on July 18, 2023, because he performed work earlier that day and he received the notice after close of business. (Opp. at 7.) He cites no contractual language or legal authority supporting that proposition. The termination notice informed Plaintiff on July 18 that his employment was terminated "effective immediately." (Compl. Ex. E.) Plaintiff does not cite to any part of the Plan which requires that notice be given prior to the completion of work and/or "close of business" on a particular date to be effective, any language stating that a termination cannot be effective the same day it is given but only the subsequent calendar day, or any language that requires the determination of

"termination for cause" be made prior to any exercise attempt by the employee. Nor does the fact that Plaintiff performed services earlier in the day prevent his employment from ending later that same day. *Cf. Sharma v. District of Columbia*, 791 F. Supp. 2d 207, 214 (D.D.C. 2011) (determining that, in the context of calculating statutes of limitations for District and federal whistleblower claims, "a plaintiff is terminated from employment when she receives 'final, unequivocal, and definite' notice of her termination, even if the effective date occurs later" (quoting *Del. State College v. Ricks*, 449 U.S. 250, 259 (1980))).

Plaintiff's argument also does not establish that his option exercise was completed before the termination became effective. The Complaint alleges only that he submitted a request to exercise the options. (Compl. ¶ 42.) It does not allege that the transaction was accepted, completed, funded, or otherwise irrevocably consummated before his termination. To the contrary, Plaintiff admits that in response to his exercise request, he received a notice that it was "pending company approval, which would usually take two to five business days." (*Id.*) The Plan extinguished his "right to exercise" immediately upon his for-Cause termination. (Compl. Ex. B § 7.7.) Plaintiff cannot convert an uncompleted request into a completed exercise by asserting that he worked during an earlier portion of the same day.

Count I should therefore be dismissed.

### B. The Implied Covenant Claim Seeks to Override, Rather than Enforce, the Parties' Agreement.

Plaintiff contends that the implied covenant required Last Energy to exercise its discretion in good faith. That general proposition does not save Count II. The relevant question is whether Plaintiff has pleaded an implied obligation consistent with the contract's express language or instead seeks to impose a limitation that contradicts the parties' bargain.

Here, the Plan expressly assigns the Cause determination to Last Energy in its sole discretion and expressly provides the consequence of that determination. (Compl. Ex. B §§ 2.5, 7.7.) Plaintiff's theory would permit a court to replace the Company's contractually assigned determination with a *de novo* judicial determination of whether Cause existed. That result would materially alter the parties' allocation of authority. The implied covenant cannot "waive or rewrite" express terms or deprive a contracting party of a right expressly granted by the agreement. *Sibley v. St. Albans School*, 134 A.3d 789, 806 (D.C. 2016). Nor may a plaintiff use the covenant to recreate a failed breach-of-contract claim based on the same conduct and requested relief.

Plaintiff's attempt to distinguish *Billups v. Laboratory Corporation of America*, 233 F. Supp. 3d 20 (D.D.C. 2017), is unavailing. Although *Billups* applied North Carolina law and involved contractual discretion over compensation and territory assignments, the principle underlying the court's decision applies with equal force here: a plaintiff cannot invoke the implied covenant of good faith and fair dealing to negate or restrict discretion that the parties expressly conferred by contract. *Id.* at 26. Indeed, the court held that where a contract expressly authorized the challenged conduct, the exercise of that contractual right could not, standing alone, support a claim for breach of the implied covenant. The same is true here. The Plan expressly identifies the determination at issue, vests Last Energy with sole discretion to decide whether the underlying conduct falls into one of the "Cause" definitions in the Plan, and specifies the consequences of that determination. Having agreed to those terms, Plaintiff cannot recast his disagreement with Last Energy's exercise of its contractual authority as a claim for breach of the implied covenant. To hold otherwise would permit an implied obligation to override an express contractual provision, contrary to well-established principles of contract law.

In addition, Count II duplicates Count I. Both claims rest on the allegation that Last Energy improperly classified Plaintiff's separation as a for-Cause termination and consequently extinguished his option rights. Both seek the value of the same options. (Compl. ¶¶ 67-72.) Plaintiff identifies no separate contractual expectation, distinct conduct, or independent injury supporting Count II.

Accordingly, Count II should be dismissed.

**C. The Fraud Claim Remains Duplicative and Inadequately Pleaded.**

**1. The fraud theory is inseparable from Plaintiff's contractual rights.**

Plaintiff alleges that Mr. Kugelmass accepted his resignation and agreed to a two-week transition period but later terminated him for Cause. (Compl. ¶¶ 75-80.) The allegedly false representation thus concerned Plaintiff's employment status, the manner in which his employment would end, and the corresponding effect on his options. Each issue is governed by the employment and equity agreements underlying Counts I and II. Plaintiff has not identified a misrepresentation collateral to those agreements. His theory remains that Defendants mischaracterized his separation in order to deprive him of contractual benefits. That is the same alleged wrong, based on the same conduct, causing the same alleged loss as the contract claims.

Plaintiff invokes the general duty not to commit fraud, but that principle does not automatically convert any alleged contractual misrepresentation into an independent tort. The alleged tort must rest on facts, duties, and damages meaningfully independent of the contract dispute. *Choharis v. State Farm Fire & Casualty Co.*, 961 A.2d 1080, 1089 (D.C. 2008) ("However, even a willful, wanton or malicious breach of a contract to pay money cannot support a claim of fraud." (citations omitted)). Otherwise, every allegation that a contracting party acted dishonestly could support both contract and fraud claims, eliminating the distinction that D.C. law preserves. The Opposition's reliance on *Ludwig & Robinson, PLLC v. BiotechPharma, LLC*, 186

A.3d 105, 110 (D.C. 2018), is misplaced. That case involved an alleged representation concerning a nonexistent source of payment, a fact collateral to the defendant's contractual obligation to pay legal invoices. *Id.* at 110. Here, the alleged representation concerns the very subject of the parties' dispute: the character and consequences of Plaintiff's separation under the Plan.

*Molock v. Whole Foods Market, Inc.*, 297 F. Supp. 3d 114 (D.D.C. 2018), is similarly distinguishable. The alleged misrepresentations there induced employees to enter or remain in an employment relationship under a bonus program that allegedly was being manipulated. *Id.* at 120. Here, Plaintiff does not allege that the July 17 statement induced him to enter the employment agreement or accept the option arrangement. By that time, the parties had operated under those agreements for more than three years. The alleged statement instead concerned how Plaintiff's separation would be treated under existing agreements.

**2. Plaintiff still fails to plead justifiable reliance or causation.**

Plaintiff alleges that he continued working because Defendants accepted his proposed transition period. But the Complaint establishes that Plaintiff himself proposed the transition. (Compl. ¶¶ 35-39.) It does not allege that Defendants requested additional time, imposed the transition as a condition, or dissuaded him from exercising his options on that very same day of his purported resignation. (*See generally* Compl.) More importantly, Plaintiff submitted his exercise request the next day. (*Id.*at ¶ 42.) Thus, the alleged statement did not cause him to wait two weeks before attempting to exercise his options. His own allegations show that he acted almost immediately.

The Opposition now suggests that Plaintiff would have exercised his options even earlier or ceased working immediately if Defendants had disclosed an intention to terminate him. (Opp. 10-11.) This argument makes no sense because it ignores the critical fact that *had* Defendants informed Plaintiff that he was terminated for cause during the conversation on July 17, he would

not have been able to exercise the options at all. Even if one were to set this logical fallacy aside for the moment, the claim still fails because the Complaint does not plead nonconclusory facts establishing:

1. when Plaintiff otherwise would have submitted the request;
2. that an earlier request would have been completed before termination;
3. that submitting a request itself vested an irrevocable right;
4. that ceasing work would have prevented a for-Cause determination; or
5. that the alleged transition representation, rather than the later Cause determination, produced the claimed loss.

A fraud claim requires a plausible causal connection between reliance and injury. *Sundberg v. TTR Realty, LLC*, 109 A.3d 1123, 1131-33 (D.C. 2015). Plaintiff's speculation about what might have occurred under a different sequence of events does not satisfy that requirement. *Id.*

**3. Plaintiff's Opposition demonstrates that he failed to plead fraudulent intent with particularity in the Complaint.**

Plaintiff's arguments that he has satisfied Rule 9(b)'s heightened pleading requirements also fail. It is inherent with any fraud-in-the-inducement theory that the intent to defraud must exist at the time the statements that caused the reliance occurred. *Sundberg*, 109 A.3d at 1131 (identifying separate elements of fraud and misrepresentation claims as "a false representation" that was "made with knowledge of its falsity"). As to this key element of his claim, however, Plaintiff alleges only "on information and belief" that Mr. Kugelmass had already decided to terminate Plaintiff when he accepted the proposed transition. (Compl. ¶ 77.) "As a general rule, general allegations based on "information and belief" do not satisfy Rule 9(b)." *Bender v. Rocky Mountain Drilling Assocs.*, 648 F. Supp. 330, 336 (D.D.C. 1986); *see also E. Sav. Bank, FSB v. Papageorge*, 31 F. Supp. 3d 1, 17 (D.D.C. 2014), *aff'd*, 629 F. App'x 1 (D.C. Cir. 2015) (same). Plaintiff does not reference or even suggest a contemporaneous statement, document,

communication, or other fact showing when that decision was made. Instead, the *factual* (rather than *conclusory*) allegations in the Complaint, time and time again, assert that Defendants decided to recategorize Plaintiff's separation as "termination for Cause" *after* he submitted his resignation. (Compl. ¶¶ 45-46, 52.) The allegation that Defendants acted inconsistently the next day does not, standing alone, establish that Mr. Kugelmass's earlier statement was knowingly false when made. A subsequent change in position is not itself fraud.

Plaintiff's allegations about purported treatment of other employees do not cure this deficiency. The Complaint provides no particularized details concerning those employees, the terms of their agreements, or the circumstances of their separations. (*See generally* Compl.) Instead, the Complaint alleges *Plaintiff's* interpretation of their separations. (Compl. ¶ 28 ("Mr. Zuckerman also reported *his understanding* that other employees had been improperly prevented from exercising vested stock options and subjected to illegal employment conditions." (emphasis added)).) Furthermore, even if Plaintiff is correct about Defendants' conduct vis a vis these other employees (which they deny), Plaintiff cannot impute that conduct onto his specific set of circumstances without pleading supporting *facts*. (*See* Compl. ¶¶ 25-26.) Rule 9(b) requires particularity as to the alleged fraud against this Plaintiff, not generalized allegations of other disagreements involving stock options.

**4. The alleged damages are not distinct.**

The Opposition further asserts that the fraud claim seeks expenses incurred in responding to Defendants' conduct and punitive damages. (Opp. at 13.) But labeling relief differently does not create an independent injury. Likewise, unspecified costs of "responding" to an alleged breach do not establish damages independent of the underlying loss of the options. Punitive damages do not qualify as "special damages." Plaintiff thus failed to demonstrate that his fraud claim is anything other than an impermissibly recycled claim for breach of contract that seeks punitive damages

prohibited by law. *See Choharis*, 961 A.2d at 1089 (requiring a plaintiff to allege a tort that "exist[s] in its own right independent of the contract, and any duty upon which the tort is based must flow from considerations other than the contractual relationship."); *see also Srour v. Barnes*, 670 F. Supp. 18, 21 (D.D.C. 1987) (no punitive damages for breach of contract even where breach was "willful, wanton or malicious").

Across Counts I through III, the central alleged injury remains the same: the lost value of Plaintiff's claimed option rights. (Compl. ¶¶ 68, 72, 81-82.) Accordingly, Count III should be dismissed.

### D. The DCWPL Claim Fails Because Plaintiff Does Not Plausibly Allege Compensation Due and Unpaid.

Plaintiff's Opposition emphasizes the breadth of the D.C. Wage Payment and Collection Law but does not address the threshold defect in Count IV: the statute does not establish that compensation is due in the first instance. Even assuming stock options can constitute wages in appropriate circumstances, Plaintiff must plausibly allege an existing right to the compensation allegedly withheld. *See generally*, *Mercado v. Carmel Partners Construction LLC*, Civil Action No. 22-cv-3083 (TSC), 2024 U.S. Dist. LEXIS 169892, at *6 (D.D.C. Sep. 20, 2024) (court holding that plaintiffs must establish they were employed by defendant and therefore entitled to compensation). He has not done so.[1]

[1] While not part of Defendants' argument at this time, Defendants do wish to correct Plaintiff's assertion that the stock options "were not a discretionary bonus." (Opp. 1). The Offer Letter, which is attached to the Complaint and incorporated therein, expressly states that "[a]lthough management of the Company will recommend to the Company's Board of Directors that you be granted the option on the terms set forth herein, by execution of this letter, you acknowledge that you have no right to receive the option, or any right to have the option subject to the specific terms set forth herein, *unless* the grant is approved by the Company's Board of Directors." (Compl. Ex. A ¶ 3). Once the grant was made, which Defendants cannot deny occurred, the terms of the Plan overtook this language in the Offer Letter.

Plaintiff relies on *Ronaldson v. National Association of Home Builders* for the proposition that a contractual or other mutual understanding may give rise to a claim under the DCWPCL. No. 19-cv-1034 (CKK), 2021 WL 7210781, at *4 (D.D.C. June 3, 2021). But *Ronaldson* underscores, rather than undermines, Plaintiff's position. There, the plaintiff plausibly alleged that, under the parties' contractual agreement, she was actually "owed" commissions that constituted wages under the statute. *Id.* at *4. The DCWPCL therefore provided a mechanism to recover compensation that was already due under the governing agreement. Here, by contrast, the Plan expressly provides that Plaintiff's right to exercise his options ends immediately upon a for-Cause termination. (Compl. Ex. B § 7.7.) Thus, the threshold question is not whether stock options can constitute wages in the abstract, but whether Plaintiff possessed a contractual right to exercise those options when he attempted to do so. Under the Plan's plain terms, he did not.

Plaintiff's reliance on vesting does not change that result. The distinction between vested and exercisable options is critical. Vesting may satisfy service-based requirements and establish eligibility to exercise, but it does not eliminate separate contractual conditions governing whether, when, and under what circumstances an option may be exercised. Nor does vesting negate contractual forfeiture provisions. Accordingly, Plaintiff's allegation that his options had vested does not plausibly establish that they remained exercisable after a for-Cause termination. Indeed, Plaintiff's own pleading acknowledges this reality: he challenges the validity of the for-Cause determination through his contract-based claims precisely because he recognizes that, if the determination stands, the Plan extinguished any right to exercise the options. Put differently, Plaintiff can prevail on Count IV only if he first establishes a surviving contractual entitlement to the options. The DCWPCL does not expand rights beyond those conferred by (in this case) contract

or invalidate agreed-upon forfeiture provisions merely because the options formed part of Plaintiff's compensation package.

Because Count IV depends on the same failed assertion of a surviving contractual right as Count I, it should be dismissed.

**E. Plaintiff Fails to Plead Knowledge or Retaliatory Causation**

Plaintiff's retaliation theory fails at the threshold because the Complaint does not plausibly allege that any person responsible for the challenged actions *knew* of the allegedly protected complaints.

**1. Temporal proximity cannot substitute for knowledge.**

Plaintiff invokes the statutory presumption applicable to adverse action occurring within 90 days of protected activity. (Opp. at 15.) He does so, but then proceeds to acknowledge the applicability of the *McDonnell Douglas* burden-shifting test to DCWPCL retaliation claims. (*Id.* (citing *Harbour v. Univ. Club of Wash.*, 610 F. Supp. 3d 123, 135 (D.D.C. 2022)).) A sister court in this District reiterated the application of the *McDonnell Douglas* test to DCWPCL retaliation claims as recently as January of this year. *Gupta v. 2nd Wave LLC*, No. CV 23-3647 (SLS), 2026 WL 147840, at *14 (D.D.C. Jan. 20, 2026). The timing of these decisions is important because they were decided *after* this 90-day presumption went into effect on February 26, 2015. *See Iraheta v. Magic Meals, Inc.*, 201 F. Supp. 3d 172, 175 (D.D.C. 2016) (recognizing the DCWPCL's effective date). In *Gupta*, the alleged protected activity occurred on February 27, 2023, when the plaintiff complained of "unpaid bonuses" to the defendant's employee Keith Taylor. *Id.* at *4-5. Within days of that disclosure, Mr. Taylor—who was decisionmaker in Mr. Gupta's eventual termination—began contemplating Mr. Gupta's departure from the company. *Id.* A little over 30-days after the alleged protected disclosure, on March 31, 2023, Mr. Taylor informed Mr. Gupta via teleconference that he (Gupta) should resign and provided him with a transition agreement to

"facilitate [his] separation from the firm," which finally transpired in November 2023. *Id.* at *14. While one could argue that the March 31, 2023, conversation put the plaintiff on sufficient notice of his eventual termination to constitute an adverse action, the Court does not address the 90-day presumption in this opinion, not even in passing. Thus, it is not clear that this 90-day presumption completely eliminates the knowledge requirement that is axiomatic to retaliation claims.

Taking each alleged adverse action in turn, either the timing or the knowledge components fail to be properly pled. For the alleged diminished job responsibilities, Plaintiff does not allege that Mr. Kuglemass or the General Counsel directed those to occur, just that they did occur. As for the termination, Plaintiff cannot dispute that its occurrence on July 18, 2023, is more than 90 days after his dispute with Mr. Kuglemass, and so that presumption does not apply. Instead, he can only point to the alleged conversation he had with the acting General Counsel on July 17, 2023, shortly before his resignation as the source of protected conduct. (Compl. ¶ 36.) But Plaintiff does not allege that the acting General Counsel relayed the conversation to Mr. Kugelmass before the termination decision, that the acting General Counsel participated in the decision, or that any relevant decisionmaker otherwise knew of the complaint. So, the Court should still find the retaliation complaint inadequately pled and dismiss the claim. *See McFarland v. George Wash. Univ.*, 935 A.2d 337, 357 (D.C. 2007) ("It is not sufficient that [the defendant] *could* or even *should* have known about [the plaintiff's] complaints; [the decision-maker] must have had actual knowledge of the complaints for her decisions to be retaliatory." (citing *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004))); *see also Kolowski v. Dist. of Columbia*, 244 A.3d 1008, 1014 (D.C. 2020) (finding that "the fact that Dr. Mitchell terminated Dr. Kolowski one week after Dr. Kolowski made the protected disclosure to Mr. Hildum, standing alone, does not support a reasonable inference that Dr. Mitchell was aware of his disclosure").

**2. A conclusory allegation of causation is insufficient to state a claim for retaliation.**

The Opposition contends that Plaintiff can plead causation simply by alleging that protected activity caused the adverse action. (Opp. at 16-17.) In support of this argument, Plaintiff cites *Vance v. Chao*, 496 F. Supp. 2d 182, 187, (D.D.C. 2007), a case decided after *Twombly* but before *Iqbal*. Given *Iqbal*'s additions to the *Twombly* standard to become what is now known by the shorthand "*Twiqbal*," this case is not dispositive. After both *Twombly* and *Iqbal*, the Federal Rules require factual allegations supporting a reasonable inference of causation, not merely a recital of the causation element. Paragraph 98 of the Complaint states the conclusion that Defendants retaliated against Plaintiff. It does not fill the factual gap concerning who knew what, when they knew it, and how that knowledge affected the challenged decisions. *See Potomac Dev. Corp. v. Dist. of D.C.*, 28 A.3d 531 (D.C. 2011) (court expressly applied *Twombly*/*Iqbal* and found plaintiffs' allegations insufficient because they did not support a plausible inference that the District's delay caused the alleged harm); *Poola v. Howard Univ.*, 147 A.3d 267 (D.C. 2016) (court explained that pleadings must contain factual content permitting a reasonable inference of liability).

Accordingly, Count V should be dismissed.

**F. The Existence of Express Contracts Bars Plaintiff's Unjust Enrichment Claim**

The Opposition acknowledges that the Offer Letter, Equity Incentive Plan, option grant, and related approvals governed Plaintiff's compensation and option rights. It nevertheless argues that unjust enrichment should proceed in case those agreements prove "illusory." (Opp. at 17.) But Defendants do not contend that no contract existed. They contend that the enforceable contracts do not provide the rights Plaintiff claims. A dispute over the meaning or operation of a contract does not create an absence of contract permitting quasi-contractual recovery. *Plesha v. Ferguson*,

725 F.Supp.2d 106, 112 (D.D.C. 2010) (dismissing claim for unjust enrichment pled in the alternative when plaintiff attached a copy of the agreement to the complaint and neither party disputed the validity of the agreement).

Plaintiff's unjust enrichment claim also concerns precisely the same subject matter as his contract claim. He alleges that he provided labor and services in exchange for compensation that included stock options. (Compl. ¶¶ 103-105.) The employment and equity agreements govern both the services and the compensation. Plaintiff does not identify any extra-contractual benefit or uncompensated service outside those agreements. Alternative pleading cannot preserve a legally unavailable theory where the Complaint itself establishes the existence and applicability of the express contracts.

Count VI should be dismissed.

**G. Dismissal With Prejudice is Appropriate**

Plaintiff asks for leave to amend without identifying any additional facts he could plead or attaching a proposed amended complaint. A request embedded in an opposition brief, without any explanation of how amendment would cure the identified defects, does not satisfy Rule 15 or this Court's procedural requirements. *May v. River E. at Grandview*, 322 A.3d 557, 576 (D.C. 2024) ("[A] bare request in an opposition to a motion to dismiss—without any indication of the particular grounds on which amendment is sought[—] . . . will [not] compel a remand for leave to amend." (internal quotation marks and citations omitted)). More fundamentally, the central defects are legal rather than technical. The incorporated agreements expressly assign the Cause determination to Last Energy and extinguish option-exercise rights upon a for-Cause termination. Additional factual detail cannot alter those provisions.

Likewise, Counts II, IV, and VI fail because they seek to avoid or duplicate the rights established by the governing agreements. Count III duplicates the contract dispute and lacks an

independent injury. Plaintiff has already had the opportunity to present his theories in the Complaint and Opposition, yet he identifies no proposed factual allegations that would transform those theories into viable claims.

Accordingly, dismissal with prejudice is warranted. At minimum, any dismissal should be with prejudice as to claims whose defects arise from the governing contractual documents, including Counts I, II, IV, and VI.

## III. CONCLUSION

For the foregoing reasons, and those stated in Defendants' opening Memorandum, Defendants respectfully request that the Court grant their Motion and dismiss Plaintiff's Complaint in its entirety, with prejudice.

October 6, 2026

Respectfully submitted,

LITTLER MENDELSON, P.C.

By: */s/ Chelsie L. Smith*
Chelsie L. Smith, Bar No. 1614643
Meredith Schramm-Strosser, Bar No. 1012077
815 Connecticut Avenue, NW, Suite 400
Washington, DC 20006
CLSmith@littler.com
MSchramm-Strosser@littler.com
202.772.2531 telephone
202.330.5014 facsimile

*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that, on October 6, 2026, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF filing systems, and served copies of the foregoing via email upon the following:

Rebecca S. LeGrand
LeGrand Law PLLC
1100 H Street NW, Suite 1220
Washington, DC 20005
(202) 587-5725
rebecca@legrandpllc.com

Scott Shuchart
Shuchart PLLC
5636 Connecticut Ave., NW #42289
Washington, DC 20015
(202) 527-9026
scott@shuchartlaw.com

*Counsel for Adam Zuckerman*

*/s/ Chelsie L. Smith*